UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DOLLAR GENERAL CORPORATION, TODD J. VASOS, JEFFERY C. OWEN, JOHN W. GARRATT, and KELLY M. DILTS,<br><br>Defendants. | Civil Action No. 3:23-cv-01250<br><br>CLASS ACTION<br><br>Judge Aleta A. Trauger |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
UNIVERSAL AND QUONIAM FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF THEIR SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

|  |  | **Page** |

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 4

ARGUMENT .......................................................................................................... 7

      I.     Universal and Quoniam Should Be Appointed Lead Plaintiff ............................. 7

             A.     Universal's and Quoniam's Motion is Timely ............................................. 7

             B.     Universal and Quoniam Have the Largest Financial Interest in the Relief Sought by the Class .......................................................................... 8

             C.     Universal and Quoniam Satisfy the Requirements of Rule 23 ................... 8

             D.     Universal and Quoniam Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA ........................................................................ 12

      II.    The Court Should Approve Universal's and Quoniam's Selection of Counsel .......................................................................................................... 16

CONCLUSION ....................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) ..........................................................10, 11, 13

*Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*,
2022 WL 1515451 (S.D.N.Y. May 13, 2022) ...........................................................................10

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) .....................................................................................13, 16

*Eshe Fund v. Fifth Third Bancorp*,
2008 WL 11322108 (S.D. Ohio Dec. 16, 2008) ..............................................................7, 13, 15

*Faris v. Longtop Fin. Techs. Ltd.*,
2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ............................................................................11

*Farrah v. Provectus Biopharmaceuticals, Inc.*,
68 F. Supp. 3d 800 (E.D. Tenn. 2014) ...................................................................................8, 9

*Franchi v. SmileDirectClub, Inc.*,
2020 WL 6479561 (M.D. Tenn. Jan. 27, 2020) ......................................................................9, 12

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) .....................................................................................................13

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
2009 WL 1458234 (D. Minn. May 26, 2009) ...........................................................................11

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
2022 WL 3571995 (N.D. Cal. July 26, 2022) ...........................................................................10

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ..............................................................12, 13, 14

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ...........................................................................17

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
2019 WL 494129 (M.D. Tenn. Jan. 9, 2019) .............................................................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
605 F. Supp. 2d 570 (S.D.N.Y. 2009) .....................................................................................10

*Walker v. L Brands, Inc.*,
    2019 WL 10733381 (S.D. Ohio Oct. 16, 2019)........................................................................16

**STATUTES**

15 U.S.C. § 78u-4 *et seq.* ...................................................................................... *passim*

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369, (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)..........3, 12, 13

Universal-Investment-Gesellschaft mbH ("Universal") and Quoniam Asset Management GmbH ("Quoniam") respectfully submit this memorandum of law in support of their Motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an order: (i) appointing Universal and Quoniam as Lead Plaintiff; (ii) approving Universal's and Quoniam's selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel and Sanford Heisler Sharp, LLP ("Sanford Heisler Sharp") as Liaison Counsel for the Class; and (iii) granting any further relief as the Court may deem just and proper.

## INTRODUCTION

The above-captioned securities class action was filed on behalf of investors that purchased Dollar General Corporation ("Dollar General" or the "Company") common stock between May 28, 2020, and August 30, 2023, inclusive (the "Class Period"). The action alleges that, during the Class Period, Dollar General and certain of its current and former senior executives (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. Specifically, the action alleges that, throughout the Class Period, Defendants misled investors concerning the Company's inventory levels and the effectiveness of its controls over inventory. Dollar General investors, including Universal and Quoniam, incurred significant losses when the Company revealed a series of sales shortfalls tied to Dollar General's inventory management problems that left the Company with a glut of merchandise, which it needed to take significant and costly actions to remediate.

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a presumption that the "most adequate plaintiff" is the "person or group of persons" that has the "largest financial interest" in the relief sought by the Class in this litigation and that makes a *prima facie* showing that it meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Universal and Quoniam are the "most adequate plaintiff" by virtue of, among other things, the approximately $33.4 million in losses, as calculated on a last-in, first-out ("LIFO") basis, that they incurred on their purchases of 617,552 shares of Dollar General common stock during the Class Period.[1]

In addition to asserting the largest financial interest, Universal and Quoniam satisfy the relevant requirements of Rule 23 because their claims are typical of those of all members of the Class, and they will fairly and adequately represent the interests of the Class. As set forth in greater detail in their Joint Declaration submitted herewith, Universal and Quoniam have a long-standing business relationship, and both have experience overseeing securities class action litigation. *See* Sharp Decl., Ex. D ¶¶ 8, 10.[2] After learning of the claims against Dollar General, representatives of Universal and Quoniam began discussions with each other regarding the claims and their options to recover their significant losses, and decided on their own to partner

---

[1] Universal's and Quoniam's PSLRA-required Certifications are provided as Exhibit A to the Declaration of Kevin H. Sharp in Support of the Motion of Universal and Quoniam for Appointment as Lead Plaintiff and Approval of Their Selection of Counsel ("Sharp Decl."), submitted herewith. In addition, charts setting forth calculations of Universal's and Quoniam's losses are provided as Exhibit B to the Sharp Decl. Before filing this Motion, Quoniam received assignments of its funds' claims. *See* Sharp Decl., Ex. C (declarations of assignment).

[2] *See* Joint Declaration of Titus Noltenius, Andreas Holzapfel, Dr. Carsten Fischer, and Jochen Riechwald in Support of the Motion of Universal and Quoniam for Appointment as Lead Plaintiff and Approval of Their Selection of Counsel ("Joint Declaration"), Sharp Decl., Ex. D.

2

in seeking appointment as Lead Plaintiff in this action. *See id*. ¶¶ 10-11. Those communications included multiple calls and emails in which their counsel did not participate. *See id*. ¶¶ 10, 12.

Universal and Quoniam—large, sophisticated institutional investors with a preexisting relationship—fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action as a cohesive partnership. As highly sophisticated institutional investors with ***more than 437 billion euros*** in combined assets under management, Universal and Quoniam are the paradigmatic investors that Congress intended to serve as lead plaintiff under the PSLRA, and their appointment would fulfill this critical legislative purpose. *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Universal and Quoniam possess the capability, resources, and experience to oversee this complex litigation and ensure the vigorous prosecution of the claims against Defendants.

Universal's and Quoniam's adequacy is further demonstrated through their selection of Bernstein Litowitz to serve as Lead Counsel for the Class. Bernstein Litowitz is a nationally recognized securities litigation firm that has recovered more than $40 billion for defrauded investors and is eminently qualified to prosecute this case. Similarly, Sanford Heisler Sharp has significant experience in this Court and is well-suited to serve as Liaison Counsel in this action. Accordingly, the Court should approve Universal's and Quoniam's selection of Bernstein Litowitz as Lead Counsel and Sanford Heisler Sharp as Liaison Counsel.

Based on Universal's and Quoniam's significant financial interest in the outcome of this action, and their commitment and ability to jointly oversee the action in a cohesive and coordinated manner, Universal and Quoniam respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their Motion.

**FACTUAL BACKGROUND**

Dollar General is a large discount retail chain, with more than 19,000 stores located throughout the United States. The Company sells a broad selection of merchandise, including consumable products such as packaged foods, fresh foods and produce, and beauty and household products, as well as higher-margin non-consumable products such as seasonal merchandise and home décor. Dollar General's core customers are low- and fixed-income households, and over 80% of the Company's items are priced at or below $5. Effective management of inventory is critically important to the Company's success.

The action alleges that, throughout the Class Period, Defendants made false and misleading representations concerning Dollar General's inventory levels and inventory controls as well as the efficiency with which the Company operated its stores, including its labor management. Dollar General repeatedly represented that "we closely monitor and manage our inventory balances," and assured investors that "efficient management of our inventory has been and continues to be an area of focus for us." Defendants further represented that Dollar General's inventory was in "good shape" and "well positioned with the right mix and balance of products." Indeed, the Company's CEO stated that "[a]s it relates to the inventory levels, we couldn't be happier" and "[t]he quality of our inventory couldn't be better." The Company blamed any increase in its inventory levels on external factors like "the impact of product cost inflation" and carrying "a greater mix of higher-value products," rather than deficiencies in Dollar General's internal controls over inventory. In

4

addition, Defendants stated that Dollar General had taken effective measures to mitigate its exposure to "markdown risk" that is often associated with elevated inventory levels. Moreover, Defendants repeatedly emphasized the purported increased operational efficiency of the Company's stores, touting Dollar General's "labor productivity improvements . . . which have led to even more efficient stocking of our stores."

In truth, Dollar General lacked effective inventory management controls, which caused its inventory to balloon to unsustainable levels. Due to that inventory surplus, Dollar General was exposed to a significant risk that it would need to markdown its inventory to even lower prices. Moreover, the Company's stores were chronically understaffed, and its inventory was in disarray. As a result, Dollar General's statements concerning its business and prospects, including its financial guidance for fiscal 2023, lacked a reasonable factual basis. As a result of those misrepresentations, Dollar General common stock traded at artificially inflated prices throughout the Class Period.

The truth began to emerge on February 23, 2023, when Dollar General pre-released its preliminary financial results for its fiscal 2022 fourth quarter and full year. The Company disclosed that it anticipated reporting sales and earnings for the fourth quarter materially below what Dollar General had led investors to expect as recently as December 2022. As a result of these disclosures, the price of Dollar General stock declined by more than $8 per share.

Less than a month later, on March 16, 2023, Dollar General announced disappointing financial results for its fiscal 2022 fourth quarter and full year, including net sales for 2022 that missed the Company's prior guidance by approximately $140 million and earnings per share ("EPS") growth of only 5%, which was up to 38% below the growth range Dollar General previously provided to investors. The Company also revealed that it would be required to make

5

an "incremental investment of approximately $100 million in our stores, primarily in incremental labor hours, . . . [to] further enhance[e] store standards and the in-store experience."  As a result of these disclosures, the price of Dollar General stock declined by $6.47 per share.

Then, on June 1, 2023, Dollar General announced financial results for its fiscal 2023 first quarter that significantly missed expectations.  The Company also slashed its full-year guidance, disclosing, among other things, that it expected EPS growth to be between flat and an 8% decline in fiscal 2023, compared to its previously projected EPS growth range of between 4% and 6%.  As a result of these disclosures, the price of Dollar General stock declined by more than $39 per share, or nearly 20%.

Months later, on August 31, 2023, Dollar General again reported dismal financial results for its fiscal 2023 second quarter and, for the second consecutive quarter, materially reduced its full-year guidance for fiscal 2023.  Dollar General also revealed that it needed to take significant actions to "accelerate the pace of its inventory reduction efforts and mak[e] additional investments in targeted areas, such as retail labor."  Those actions would result in a $170 million hit to Dollar General's operating profit during the second half of 2023, including a $95 million headwind from the Company's markdowns of merchandise to facilitate a reduction in its bloated inventory and $75 million to clean up and organize excess inventory.  The remedial measures needed to address Dollar General's inventory problems caused the Company to drastically cut its prior EPS guidance for fiscal 2023 by 24%.  As a result of these disclosures, the price of Dollar General stock declined by more than $19 per share, or 12%.

6

**ARGUMENT**

**I.      Universal and Quoniam Should Be Appointed Lead Plaintiff**

Universal and Quoniam respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure that governs the appointment of a lead plaintiff in class actions arising under the federal securities laws and establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Eshe Fund v. Fifth Third Bancorp*, 2008 WL 11322108, at *4 (S.D. Ohio Dec. 16, 2008) ("The Court engages in a two-step inquiry, looking first at which party has the largest financial interest, and then determining whether the candidate meets the typicality and adequacy requirements of Rule 23(a)."). As set forth below, Universal and Quoniam believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**A.      Universal's and Quoniam's Motion is Timely**

Under the PSLRA, any class member may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On November 27, 2023, plaintiff Washtenaw County Employees' Retirement System filed this action, asserting claims for violations of Sections 10(b) and 20(a) of the Exchange Act against Defendants. That same day, counsel for plaintiff published a notice on *Globe Newswire* alerting investors to the pendency of this action and the claims asserted therein, and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is January 26, 2024. *See* Sharp Decl., Ex. E. Accordingly, Universal's and Quoniam's Motion is timely.

### B. Universal and Quoniam Have the Largest Financial Interest in the Relief Sought by the Class

Universal and Quoniam should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Universal and Quoniam incurred losses of approximately $33.4 million, as calculated on a LIFO basis, on their Class Period purchases of 617,552 shares of Dollar General common stock. *See* Sharp Decl., Exs. A & B. To the best of Universal's and Quoniam's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, Universal and Quoniam have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### C. Universal and Quoniam Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "Under Rule 23, there are two requirements for establishing lead plaintiff: '(1) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (2) the representative parties will fairly and adequately protect the interests of the class.'" *Farrah v. Provectus Biopharmaceuticals, Inc.*, 68 F. Supp. 3d 800, 804 (E.D. Tenn. 2014). At the lead plaintiff appointment stage, a movant only needs to make "a prima facie showing that it satisfies the typicality and adequacy requirements of [Rule 23]." *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2019 WL 494129, at * 2 (M.D. Tenn. Jan. 9, 2019). Universal and Quoniam satisfy both requirements.

Universal's and Quoniam's claims are typical of the claims of other Class members. Typicality requires that the claims of the class representatives "arise from the same event or

8

practice or course of conduct that gives rise to the claims of other class members and involve the same legal theory." *Franchi v. SmileDirectClub, Inc.*, 2020 WL 6479561, at \*4 (M.D. Tenn. Jan. 27, 2020) (citation and quotations omitted). Here, like all other Class members, Universal and Quoniam purchased Dollar General common stock during the Class Period at prices artificially inflated by Defendants' alleged materially false and misleading statements and were damaged as a result. *See Provectus Biopharmaceuticals*, 68 F. Supp. 3d at 805 (finding typicality requirement met when proposed lead plaintiff "purchased [defendant corporation] securities at prices that were artificially inflated by Defendants' misrepresentations and omissions and . . . was damaged through his purchase at these artificially-inflated prices"). Accordingly, Universal and Quoniam satisfy the typicality requirement.

Universal and Quoniam likewise satisfy the adequacy requirement of Rule 23. The adequacy element of Rule 23 is met where the proposed lead plaintiff shows that it has "common interests with unnamed members of the class" and that it "will vigorously prosecute the interests of the class through qualified counsel." *SmileDirectClub*, 2020 WL 6479561, at \*4 (citation and quotations omitted). "The purpose of the adequacy requirement is to ensure there are no conflicts of interest between the purported lead plaintiff and the other class members." *Provectus Biopharmaceuticals*, 68 F. Supp. 3d at 805. Universal's and Quoniam's substantial financial stake in the litigation provides them with the incentive to vigorously represent the Class's claims. Universal's and Quoniam's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Universal, Quoniam, and other Class members.

Moreover, Universal and Quoniam—a small, cohesive partnership of sophisticated institutional investors with a long-standing relationship that collectively manage assets of nearly a

half trillion euros—have demonstrated that they are fully committed to vigorously pursuing the claims on behalf of the Class. *See generally* Sharp Decl., Ex. D.

In addition, Universal and Quoniam have demonstrated that they have standing to assert these claims. *See* Sharp Decl., Ex. D ¶¶ 3, 6-7; s*ee also Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2022 WL 3571995, at *2-3 (N.D. Cal. July 26, 2022) (finding sworn declaration sufficient to establish standing). As set forth in the Joint Declaration, Universal is organized as a Kapitalverwaltungsgesellschaft ("KVG") under German law and the funds listed in its certifications are UCITS or Alternative Investment funds established under German law. *See* Sharp Decl., Ex. D ¶ 3. The investment funds managed by Universal are not independent legal entities and do not have legal capacity to sue in, or be brought before, courts of law. *See id*. Instead, Universal has the exclusive authority to sue in its own name for damages suffered by the funds that it manages. *See id*. As such, Universal has standing to assert these claims on behalf of its funds. *See Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *4 (N.D. Ohio Nov. 28, 2017) (holding that a German asset manager "falls within the prudential exception to constitutional standing and may bring these claims on behalf of its funds"); *Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022) (finding that a German asset manager qualifies for the "prudential exception" and has standing to assert claims on behalf of its fund); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 578 (S.D.N.Y. 2009) (same).

For its part, Quoniam, which is a subsidiary of Union Asset Management Holding AG ("Union"), has also provided evidence of its standing to represent its funds in this action. Quoniam serves as the investment manager for Quoniam Funds Selection SICAV ("QFS SICAV"). *See* Sharp Decl., Ex. D ¶ 6. QFS SICAV has legal title to the Dollar General shares it purchased during

the Class Period, and the capacity to sue in, and be brought before, courts of law.[3] *See id.* Prior to filing this Motion, Quoniam obtained a valid assignment of claims from QFS SICAV. *See id.*; Sharp Decl., Ex. C.

In addition, Quoniam received a valid assignment of claims from Union Investment Institutional GmbH ("UIN"), another subsidiary of Union. *See* Sharp Decl., Ex. C & Ex. D ¶ 7. The investment funds managed by UIN are UCITS funds established under German law. Those funds are not independent legal entities and do not have legal capacity to sue in, or be brought before, courts of law. *See* Sharp Decl., Ex. D ¶ 7. Instead, UIN has the exclusive authority to sue in its own name for damages suffered by the funds that it manages. *See id.* As such, UIN qualifies for the "prudential exception" and has standing to assert these claims on behalf of its funds. *See HCP*, 2017 WL 5759361, at *4 (holding that a German asset manager had standing to bring claims on behalf of the funds it managed based on the "prudential exception"); *see also Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 2009 WL 1458234, at *2 (D. Minn. May 26, 2009) (finding that Union had standing through assignments of claim); *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *5 (S.D.N.Y. Oct. 4, 2011) (assignment conferring "all rights, title and interest of the Funds in the Funds' claims" found to "conclusively establish [movant's] standing").

Universal and Quoniam have further demonstrated their adequacy through their selection of Bernstein Litowitz as Lead Counsel and Sanford Heisler Sharp as Liaison Counsel to represent the Class in this action. As discussed below, Bernstein Litowitz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to conduct complex securities class action litigation effectively. Moreover, Sanford Heisler

---

[3] QFS SICAV is divided into separate portfolios, but those portfolios are not separate legal entities and, as noted, QFS SICAV holds title to the shares invested in each portfolio.

11

Sharp has significant experience in this Court. Accordingly, Universal and Quoniam satisfy Rule 23's adequacy requirement.

The strong presumption favoring the appointment of the lead plaintiff applicant that has the largest financial interest and made a preliminary showing of its typicality and adequacy can be rebutted only "upon proof" that it is atypical or inadequate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also SmileDirectClub*, 2020 WL 6479561, at *3 (rebutting the presumption requires "proof . . . that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that would make its adequate representati[on] of the class impossible") (citation and quotations omitted). Because Universal and Quoniam have made a showing of their typicality and adequacy, and no proof exists to show otherwise, Universal and Quoniam satisfy Rule 23's requirements.

**D.** **Universal and Quoniam Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA**

In addition to possessing the largest financial interest and satisfying the requirements of Rule 23, Universal and Quoniam are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. *See In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at *6 (W.D. Tenn. Dec. 15, 2010) ("One of the main purposes Congress sought to advance when enacting the PSLRA was to promote the appointment of institutional investors as lead plaintiffs."); *see also* H.R. Conf. Rep. No. 104-369, at *34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically

12

have a large financial stake in the outcome of the litigation, would be beneficial because such investors are more apt to effectively manage complex securities litigation. *See id.* at *34-35.

The plain text of the PSLRA expressly permits the appointment of a group of class members to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Accordingly, courts throughout the Sixth Circuit, and other Circuits, routinely appoint groups of class members as lead plaintiff. *See, e.g.*, *Regions Morgan Keegan*, 2010 WL 5173851, at *13 (appointing group of investors as lead plaintiff, and noting that "[b]ecause of this explicit statutory language, most courts now find that groups may serve as lead plaintiff if they demonstrate that they can perform the active supervisory role the PSLRA envisions"); *Fifth Third Bancorp*, 2008 WL 11322108, at *4 (appointing group of three investors, noting that "the majority of courts are clear that groups of five or less investors are appropriate") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3rd Cir. 2001)); *HCP*, 2017 WL 5759361, at *12 (appointing two institutional investors as lead plaintiff); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) (appointing "a small group of investors, each of whom is a sophisticated investor" as lead plaintiff); *see also In re Mersho*, 6 F.4th 891, 903 n.4 (9th Cir. 2021) ("[It] is clear from the statutory language" that "a group can serve as a lead plaintiff."). Here, Universal and Quoniam are a cohesive pair of institutions that determined on their own that their joint appointment as Lead Plaintiff would advance the Class's best interests. *See* Sharp Decl., Ex. D ¶¶ 10-11.

Importantly, Universal and Quoniam have a long-term relationship that predates the filing of this Motion. Specifically, Universal is part of Universal Investment Group, while Quoniam is a subsidiary of Union. *See* Sharp Decl., Ex. D ¶ 8. Both Universal Investment Group and Union are based in Germany and are among the largest financial services companies in Europe. *See id.* As titans of the institutional investor community in Germany, Universal Investment Group,

including Universal, and Union, including Quoniam, have maintained a longstanding business relationship, through which Universal Investment Group and Quoniam provide each other with, among other things, certain fund administration and portfolio management services. *See id.* This business relationship converged with respect to Universal's and Quoniam's investments in Dollar General common stock. *See id.* In particular, Quoniam served as the external investment advisor for several of the funds managed by Universal that incurred losses on Dollar General. *See id.* Given their long-term relationship, Universal and Quoniam are aware of each other's experience overseeing securities class action litigation in the United States. *See id.* ¶ 10.

After learning of the claims against Dollar General, representatives of Universal and Quoniam began discussions with each other, which included multiple calls and emails in which their counsel, Bernstein Litowitz, did not participate. *See id.* Ultimately, Universal and Quoniam informed Bernstein Litowitz of their decision to jointly seek appointment as Lead Plaintiff. *See id.* Afterwards, prior to seeking appointment as Lead Plaintiff, representatives of Universal and Quoniam and Bernstein Litowitz convened a conference call to discuss, among other things, the merits of the claims against Defendants, the investigation undertaken by Bernstein Litowitz, Universal's and Quoniam's commitment to jointly prosecute this action, and their common goals and strategy for the prosecution of this litigation. *See id.* ¶ 12.

Universal and Quoniam understand the duties and responsibilities with which a Lead Plaintiff is charged under the PSLRA, including to oversee and supervise the litigation separate and apart from counsel, and Universal and Quoniam have submitted a Joint Declaration attesting to their willingness and ability to fulfill those duties and responsibilities in this case. *See* Sharp Decl., Ex. D ¶¶ 2, 5, 11-13, 17; *see also Regions Morgan Keegan*, 2010 WL 5173851, at *13 (appointing group of investors that submitted joint declaration demonstrating that the group's

members "have spoken with each other outside the presence of counsel and have established common goals for the litigation and a litigation strategy"). The Joint Declaration also establishes that Universal and Quoniam fully understand the Lead Plaintiff's responsibilities and obligations to the Class under the PSLRA, which include acting as a fiduciary for all Class members, staying informed about the litigation, participating in depositions and settlement mediations, as needed, and reviewing and authorizing the filing of important litigation documents. *See* Sharp Decl., Ex. D ¶¶ 2, 5, 13, 17. Universal and Quoniam are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation. *See id.* ¶¶ 2, 5, 8-9. Moreover, Universal and Quoniam are committed to ensuring that this litigation is prosecuted in an efficient and effective manner. *See id.* ¶¶ 13-14.

Universal and Quoniam are strongly motivated to recover the losses they incurred as a result of Defendants' alleged violations of the federal securities laws. *See* Sharp Decl., Ex. D ¶ 9. Indeed, Universal's and Quoniam's decision to join together to prosecute this action followed from Universal's and Quoniam's roles as fiduciaries and their shared concerns regarding the integrity of the public markets. *See id.* The decision to partner in seeking appointment as Lead Plaintiff was further informed by Universal's and Quoniam's experience serving as a lead plaintiff in other securities class actions, including cases in which they worked together with other institutional investors and supervised the work of lead counsel. *See id.* ¶¶ 2, 5, 11.

In sum, Universal and Quoniam have demonstrated their willingness, resources, experience, and commitment to working closely with one another to oversee the prosecution of this action, supervise their proposed Lead Counsel, and obtain the best possible recovery for the Class. *See, e.g.*, *Fifth Third Bancorp*, 2008 WL 11322108, at *5 (appointing group of investors who "presented sufficient information [in a joint declaration] to show that they are willing to work

together in the best interests of the proposed class"); *Cardinal Health*, 226 F.R.D. at 307 (appointing group that submitted a joint declaration assuring the court that "its members have indeed established a cohesive relationship").

## II. The Court Should Approve Universal's and Quoniam's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class." *Walker v. L Brands, Inc.*, 2019 WL 10733381, at *4 (S.D. Ohio Oct. 16, 2019).

Universal and Quoniam have selected Bernstein Litowitz to serve as Lead Counsel for the Class. As detailed in its firm résumé, Bernstein Litowitz is among the preeminent securities class action law firms in the country and has extensive experience serving as lead counsel in securities class actions, including in this District. *See* Sharp Decl., Ex. F (Bernstein Litowitz Firm Résumé). For example, Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling over $6 billion—the second largest recovery in securities class action history—were obtained for the class. Bernstein Litowitz also secured a recovery of $2.425 billion for the class in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.), a $1.06 billion recovery for the class in *In re Merck & Co. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), a $1 billion recovery for the class in *In re Wells Fargo & Company Securities Litigation*, No. 20-cv-4494 (S.D.N.Y.), and a $730 million recovery for the class in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.).

Other examples in which courts in the Sixth Circuit, including this District, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re HCA Inc. Sec. Litig.*, No. 05-cv-960 (M.D. Tenn.) (recovering $20 million on behalf

16

of investors); *In re King Pharm., Inc. Sec. Litig.*, No. 03-cv-77 (E.D. Tenn.) (recovering $38.25 million on behalf of investors); *In re Accredo Health, Inc. Sec. Litig.*, No. 03-cv-2216 (W.D. Tenn.) (recovering $33 million on behalf of investors); *New York State Teachers' Retirement System v. General Motors Co.*, No. 14-cv-11191 (E.D. Mich.) (recovering $300 million on behalf of investors); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, No. 05-md-1725 (E.D. Mich.) (recovering $128 million on behalf of investors); *Sheth v. OM Group Inc.*, No. 02-cv-2163 (N.D. Ohio) (recovering $92 million on behalf of investors); *The Department of the Treasury of New Jersey and Its Division of Investment v. Cliffs Natural Resources Inc.*, No. 14-cv-1031 (N.D. Ohio) (recovering $84 million on behalf of investors); and *In re SmarTalk Teleservices, Inc. Sec. Litig.*, No. 98-cv-814 (S.D. Ohio) (recovering $27 million on behalf of investors).[4]

Moreover, Universal and Quoniam have selected Sanford Heisler Sharp to serve as Liaison Counsel for the Class. Sanford Heisler Sharp has significant experience in this Court and is well-suited to serve as Liaison Counsel in this action. *See* Sharp Decl., Ex. I (Sanford Heisler Sharp Firm Résumé). Indeed, prior to joining Sanford Heisler Sharp and becoming the firm's Co-Vice Chairman, Kevin H. Sharp served as District Judge for the U.S. District Court for the Middle

---

[4] Bernstein Litowitz brings to the Court's attention an order issued by a court in the United States District Court for the Northern District of California, in an unrelated action against Symantec Corporation, in which Bernstein Litowitz served as lead counsel. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996, at *1 (N.D. Cal. Apr. 20, 2021) (Sharp Decl., Ex. G). In *Symantec*, counsel for an unsuccessful lead plaintiff movant raised questions about Bernstein Litowitz's hiring of a former employee of the lead plaintiff. Following discovery and extensive briefing, the *Symantec* court allowed Bernstein Litowitz to continue as class counsel, but directed Bernstein Litowitz to bring the order to the attention of any court when seeking appointment as class counsel. *See id.* at *1-2. Universal and Quoniam are aware of the order, and affirm their selection of Bernstein Litowitz as proposed Lead Counsel. Importantly, the *Symantec* court granted final approval of a $70 million settlement achieved by Bernstein Litowitz. In addition, courts throughout the country have repeatedly appointed Bernstein Litowitz as lead or class counsel in securities class actions after being apprised of the *Symantec* order. *See* Sharp Decl., Ex. H (collecting cases).

District of Tennessee from May 2011 to April 2017, including service from 2014 to 2017 as the Court's Chief Judge. Accordingly, Sanford Heisler Sharp is well-qualified to serve as Liaison Counsel in this action.

Thus, the Court may be assured that by granting this Motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Universal's and Quoniam's selection of Bernstein Litowitz as Lead Counsel and Sanford Heisler Sharp as Liaison Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Universal and Quoniam respectfully request that the Court: (i) appoint them as Lead Plaintiff; (ii) approve their selection of Bernstein Litowitz as Lead Counsel and Sanford Heisler Sharp as Liaison Counsel for the Class; and (iii) grant any further relief as the Court may deem just and proper.

DATED: January 26, 2024

Respectfully submitted,

**SANFORD HEISLER SHARP, LLP**

*/s/ Kevin H. Sharp*
Kevin H. Sharp, BPR No. 016287
Brent A. Hannafan, BPR No. 025209
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7001
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
bhannafan@sanfordheisler.com

*Liaison Counsel for Proposed Lead Plaintiff Universal and Quoniam and Proposed Liaison Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Gerald H. Silk

18

Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff Universal and Quoniam and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Kevin H. Sharp
Kevin H. Sharp, BPR No. 016287