| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> DOLLAR GENERAL CORPORATION, TODD J. VASOS, JEFFERY C. OWEN, JOHN W. GARRATT, AND KELLY M. DILTS, <br><br> Defendants. | Case No. 3:23-cv-01250 <br><br> Judge Aleta A. Trauger <br><br> CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE NYC FUNDS'
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL**

The New York City Police Pension Fund, the New York City Fire Department Pension Fund, and the Board of Education Retirement System of the City of New York ("the NYC Funds") respectfully submits this memorandum of law in support of its motion for appointment as Lead Plaintiff and approval of its selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as lead counsel and Stranch, Jennings & Garvey, PLLC ("SJG") as liaison counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I. INTRODUCTION

The above-captioned action is brought on behalf of those who purchased or otherwise acquired Dollar General Corporation ("Dollar General" or the "Company") securities between May 28, 2020 and August 30, 2023 against the Company and certain individual officers and entities for alleged violations of the Securities and Exchange Act of 1934 due to false and misleading claims regarding staffing, pricing, and inventory control volume. The NYC Funds should be appointed as Lead Plaintiff of this action because it: (1) timely filed this Motion; (2) has the largest financial interest in the outcome of this litigation; and (3) is typical and adequate to represent the interests of the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Finally, the NYC Funds has chosen Lead and Liaison Counsel that will provide high caliber legal representation. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Accordingly, the NYC Funds' motion should be granted in its entirety.

## II. STATEMENT OF FACTS

Dollar General is a discount retailer headquartered in Goodlettsville, Tennessee that operates over 19,000 stores across the United States and Mexico. The Company primarily sells consumer goods, including packaged and fresh foods, beauty and home goods, and clothing, with over 80% of the items priced at or below five dollars. Dollar General stores are concentrated in rural, low- and fixed-income areas where there is little competition—either because the store drove others out or entered a food desert—thereby creating brand loyalty and dependency.

The Class Period begins on May 28, 2020, when Dollar General announced strong first quarter 2020 financial results, reporting favorably on three key financial metrics: 27.6% increase

in net sales, 21.7% increase in same-store sales,[1] and 69.2% increase in operating profit. Dollar General continued reporting steady growth on those three metrics for the next two years, reassuring investors that investments in labor productivity were "enhancing customer convenience and further improving on shelf availability"; "[e]fficient management of our inventory has been and continues to be an area of focus"; the Company "closely monitor[s] and manage[s] our inventory balances"; and the Company was "in the best position on pricing we've been in."

Contrary to these positive assertions, however, Dollar General had multiple known and systemic issues impeding its ability to deliver on financial guidance. For years, Dollar General has understaffed its stores, engaged in deceptive pricing where the Company presents one price on the shelf but charges the customer a higher price at the register, and failed to control the volume of inventory to the point that fire marshals have shut down stores due to the dangerous amount of excess inventory piled up. Overcharges in hundreds of Dollar General stores across multiple states were keyed into cash registers and artificially inflated the Company's revenue and profits. Such tactics have been made public by multiple state attorneys general lawsuits—and their subsequent settlements—as well as reporting by multiple news outlets and analysts.[2]

Then, starting in late 2022, Dollar General's claims of operational strength and internal controls began to unravel with several partial disclosures occurring over a ten-month period.

On December 1, 2022, Dollar General publicized promising fourth quarter 2022 guidance, expecting fourth quarter same-store sales growth of 6-7% and diluted earnings per share ("EPS") between $3.15 and $3.30. But just a few weeks later, on February 23, 2023, the Company announced preliminary fourth quarter and full-year 2022 results well below guidance: Same-store sales growth was expected to be only 5.7% while diluted EPS would range only from $2.91 to $2.96. On this news, Dollar General shares fell from $225.27 on February 22, 2023 to $217.11 on February 23, 2023, representing a decline of more than 4%.

---

[1] "Same store sales" is a key financial metric used by retailers to evaluate existing store performance. It measures growth of sales per store from the previous period to current period.

[2] In 2023 alone, Dollar General settled allegations of overcharging with Wisconsin for $850,000, with Ohio for $1 million, with North Carolina for nearly $71,000, and with New Jersey for $1.2 million.

2

The impact of the Company's staffing and inventory problems became clearer on March 16, 2023, when Dollar General reported its fourth quarter and full-year 2022 results. The Company again fell short of its projections, with annual net sales missing guidance by $140 million and EPS growth 38% below guidance. On this news, Dollar General shares fell from $218.56 on March 15, 2023 to $212.09 on March 16, 2023, representing a decline of more than 3%. Despite this announcement, the Company reassured investors that it had these issues under control through a one-time "incremental investment of approximately $100 million in our stores, primarily in incremental labor hours, as we look to build on our sales momentum and capture additional market share by further enhancing store standards and the in-store experience." Dollar General further asserted that inventory growth was "moderating" and concluded: "Importantly, we continue to believe the quality of our inventory is in good shape."

The Company announced similarly disappointing first quarter 2023 results on June 1, 2023. In addition to revenue coming in at $130 million below analyst expectations, Dollar General also downgraded its 2023 financial forecast: It now expected same-store sales to rise only 1-2% rather than 3-3.5%. Net sales growth was expected to be between 3.5 and 5%, rather than 5.5 to 6%. And finally, diluted EPS was expected to decrease up to 8% rather than grow 4-6%. On this news, Dollar General shares fell from $201.09 on May 31, 2023 to $161.86 on June 1, 2023, representing a decline of more than 20%.

Nonetheless, Dollar General again reassured investors that it was on top of the underlying problems, claiming it "made significant progress improving our execution on multiple fronts, including on our supply chain recovery efforts and enhancements to the customer experience with our previously announced investment in incremental labor hours" and that it was "refining our inventory management process, including making some structural reporting realignments within our team to allow us to move more nimbly to respond to customer demand and the needs of the business." As a result, the Company said that it felt "good about our position, and are taking action to better serve our core customer, which is our most important calling at Dollar General."

But pre-market on August 31, 2023,[3] the Company announced—contrary to its narrative of growth and profit—weak financial results for its second quarter of 2023 results. Not only did the results reveal that same-store sales had decreased 0.1%, operating profits had decreased 24.2%, and EPS had decreased 28.5%, but also led the Company to again downgrade its 2023 forecasts. Now, Dollar General was only on track for net sales growth of 1.3 to 3.3% rather than 3.5 to 5%; same-store sales growth was expected to be only 1% compared to guidance of 1 to 2% growth; and diluted EPS, instead of falling 8%, was expected to plummet to negative 22 to negative 34%. The impact of this news was realized pre-market,[4] as Dollar General shares crashed from $157.66 on August 30, 2023 to $138.50 on August 31, 2023 to $129.55.

This substantial stock price decline caused hundreds of millions of dollars in losses to Dollar General investors who relied on the accuracy of Defendants' statements and suffered damages when the truth began to be revealed. In contrast, during the Class Period, multiple Defendants profited; Chief Executive Officer Todd J. Vasos sold over $283 million in Dollar General stock and then-Chief Financial Officer John W. Garratt sold over $31 million of his Dollar General shares. This parade of insider trading occurred right around the time that both defendants departed their executive roles. While Garratt announced his June 2023 retirement in January 2023, Vasos's November 2022 resignation from the CEO role was short-lived: Vasos was hired back into the CEO spot in October 2023 after a period of declining profitability and weak sales under his replacement, former Chief Operating Officer Jeffery C. Owen, who is also a named Defendant in this action.

---

[3] *Dollar General Corporation Reports Second Quarter 2023 Results*, NASDAQ (Aug. 31, 2023, 6:55 AM), https://www.nasdaq.com/press-release/dollar-general-corporation-reports-second-quarter-2023-results-2023-08-3.

[4] *Dollar General Cuts FY23 Guidance; Stock Plunges*, BUSINESSINSIDER (Aug. 31, 2023, 7:22 AM), https://markets.businessinsider.com/news/stocks/dollar-general-cuts-fy23-guidance-stock-plunges-1032595888.

## III.    ARGUMENT

### A.    The NYC Funds is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff.

The PSLRA mandates that the court "shall adopt a presumption that the most adequate plaintiff … is the person or group of persons that": (1) "has either filed the complaint or made a motion in response to a notice"; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Garden City Emps.' Ret. Sys. v. Psychiatric Sol., Inc.*, 2010 WL 1790763, at \*2 (M.D. Tenn. Apr. 30, 2010).  The NYC Funds satisfies each of these requirements and should therefore be appointed as Lead Plaintiff.

### 1.    The NYC Funds Timely Moved for Appointment.

Pursuant to the PSLRA, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on November 27, 2023. *See* Declaration of J. Gerard Stranch, IV ("Stranch Decl."), Ex. A. The PSLRA further provides that within 60 days after publication of the notice of pendency, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

This 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on January 26, 2024. The NYC Funds' motion is filed within the statutory 60-day time period and contains the required certifications setting forth, *inter alia*, the NYC Funds' purchases or acquisitions of Dollar General securities and indicating that the NYC Funds has reviewed the relevant complaints and are willing to serve as a representative party on

5

behalf of the Class. *See* Stranch Decl., Ex. B. The NYC Funds is therefore entitled to be considered for appointment as Lead Plaintiff.

### 2. The NYC Funds has the Largest Financial Interest in the Relief Sought by the Class.

As evidenced by its PSLRA Certification, the NYC Funds purchased or acquired almost 158,317 shares of Dollar General stock and suffered a PSLRA loss on their Dollar General investment of approximately $8.8 million under the LIFO (last-in-first-out) accounting method and $15.3 million under the FIFO (first-in-first-out) accounting method. *See* Stranch Decl., Ex. C. To the best of their counsel's knowledge, the NYC Funds is not aware of any plaintiffs with a larger financial interest in the litigation under either metric. Therefore, the NYC Funds satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The NYC Funds Satisfies Rule 23's Typicality and Adequacy Requirements.

The PSLRA requires that the lead plaintiff also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u- 4(a)(3)(B)(iii)(I)(cc). At this stage, the Rule 23 considerations are generally limited to the questions of typicality and adequacy. *See Garden City Emps.' Ret. Sys.*, 2010 WL 1790763, at *2.

In the Sixth Circuit, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Garden City Emps. Ret. Sys. v. Psychiatric Sol., Inc.*, Nos. 3:09-cv-00882, 2012 WL 1071281, at *36–37 (M.D. Tenn. Mar. 29, 2012) (citation omitted). Here, if appointed, the NYC Funds intends to allege that (1) Defendants violated the federal securities laws by disseminating false and misleading statements and omissions and (2) the NYC Funds, like all the other class members, purchased Dollar General stock at prices artificially inflated by Defendants' misrepresentations and omissions. Because the claims asserted by the NYC Funds are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other class members, the NYC Funds meets the typicality requirement of Rule 23.

To find a plaintiff adequate, "(1) the representative[s] must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted). The NYC Funds is a more than adequate representative for the Class. The NYC Funds is a sophisticated institutional investor, which the PSLRA prefers. *See In re Am. Serv. Grp.*, No. 3:06–00323/337/341/443, 2006 WL 2503648, at *3 (M.D. Tenn. Aug. 29, 2006). Courts across the country, including this Court, have recognized the NYC Funds' ability to capably lead securities fraud class actions. *See, e.g.*, *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys.*, Nos. 3:11-cv-0433/0451/0601 (M.D. Tenn. Nov. 28, 2011) (appointed lead plaintiff), *The New York City Fire Dep't Pension Fund et al. v. Coupang, Inc. et al.*, No. 1:22-cv-07309 (S.D.N.Y.) (appointed lead plaintiff), *Mannacio v. Discover Fin. Servs. et al.*, No. 1:23-cv-06788 (N.D. Ill.) (appointed lead plaintiff), *In re Juniper Networks, Inc. Sec. Litig.*, No. 3:06-cv-4327-MJJ (N.D. Cal.) ($169.5 million settlement), *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($625 million settlement), and *In re Wachovia Equity Sec. Litig.*, No. 08-cv-6161 (S.D.N.Y.) ($75 million settlement).

Finally, the NYC Funds is not aware of any potential conflicts of interest or any matters that would preclude it from fulfilling its duties as lead plaintiff, nor does the NYC Funds have any interests adverse to those of the putative Class. Additionally, as explained below, the NYC Funds hired experienced counsel, further evidencing its willingness to competently represent the interests of the class. All of these factors demonstrate that the NYC Funds will fairly and adequately represent the interests of the class under Rule 23(a)(4).

\* \* \*

Because the NYC Funds filed a timely motion, has the largest financial interest in the relief sought by the class during the Class Period, and demonstrated their typicality and adequacy, the Court should adopt the presumption that it is the "most adequate plaintiff" and appoint it as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

**B.      The Court Should Approve the NYC Funds' Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The NYC Funds selected Cohen Milstein as lead counsel and SJG as liaison counsel, and the Court should approve that selection.

Appointing Cohen Milstein would be prudent to protect the interests of the Class. As detailed in its firm resume, *see* Stranch Decl., Ex. D, Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions across the country and has obtained excellent recoveries on behalf of defrauded investors. Notably, the firm recently obtained a $1 billion recovery for Wells Fargo investors in a securities fraud lawsuit involving complex compliance and banking privilege issues. *In re Wells Fargo & Co. Sec. Litig.*, 1:20-cv-04494 (S.D.N.Y. 2023). Cohen Milstein has also litigated multiple securities fraud lawsuits to successful resolution in Tennessee's federal district courts, including defeating a motion to dismiss and ultimately securing a $7.5 million settlement in an action against Tivity Health, Inc. for misrepresenting its relationship with one of its most important clients. *Weiner, et al. v. Tivity Health, Inc., et al.*, No. 3:17-cv-01469 (M.D. Tenn. 2021). In approving the settlement, the Honorable Waverly D. Crenshaw, Jr. commended Cohen Milstein for being "outstanding [client] representatives." Then in 2022, Cohen Milstein won a $35 million settlement in the Eastern District of Tennessee against KPMG based on the auditor's approval of a $480 million valuation for an essentially worthless Alaskan oil reserve. *Lewis Cosby, et al. v. KPMG, LLP*, No. 3:16-cv-00121-TAV-CCS (E.D. Tenn. 2022).

The same is true for appointment of Gerard Stranch of SJG as liaison counsel. Mr. Stranch is a third-generation trial lawyer and the founding and managing member of SJG, the largest and most successful Tennessee-based class action firm. While Mr. Stranch has a national practice, he has extensive complex litigation experience involving class actions, mass-torts, anti-trust, ERISA, securities and shareholder derivative actions, data breach, as well as labor and employment law. Mr. Stranch has unmatched experience in Tennessee with organizing and managing complicated

8

litigation. He was the lead trial attorney and managed over 20 attorneys plus paralegals and clerks for the *Sullivan Baby Doe* opioids case against Purdue Pharmaceuticals, Malinkrodt, Endo Health Solutions and Endo Pharmaceuticals, Inc. (*Staubus v. Purdue Pharma LP*, No. C41916-C (Tenn. Cir. Ct., Sull. Cnty.)), which resulted in two bankruptcies that included negotiated multi-billion dollar national settlement deals for Purdue Pharma and Malinkrodt, and a default judgment on liability against Endo for repeated discovery violations. The remaining claims against Endo in the landmark case settled as jury selection was beginning for $35 million, the largest per capita opioid recovery against Endo by multiple orders of magnitude.

Mr. Stranch's reputation for quality litigation and his ability to work fairly and cooperatively with co-counsel led to his selection from the hundreds of lawyers in the *In Re: National Prescription Opiate Litigation MDL* to serve and to be appointed as one of only three lawyers in private practice as class counsel for the Negotiation Class. Mr. Stranch was appointed to serve on the steering committees of *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability* (No. 15-MD-02672, N.D. Cal.), resulting in approximately $17 billion in settlements. He was co-lead counsel in *In re: Alpha Corp. Securities Litigation*, resulting in a $161 million settlement, and lead counsel in *Lankford v. Dow Chemical* (consumer protection class action), which resulted in a $4.2 million settlement. He helped obtain a $590.5 million settlement while serving on the executive committee in *Dahl v. Bain Capital Partners* (anti-trust), and served as liaison counsel in *In Re: Regions Morgan Keegan Closed-End Fund Litigation*, resulting in a $62 million settlement. He also was appointed to the Plaintiff Steering Committee for the *In re: New England Compounding Pharmacy, Inc. Products Liability Litigation MDL* and the lawyer in charge of coordinating all Tennessee litigation.[5]

---

[5] In which more than $230 million in settlements have been obtained on behalf of the victims of the New England Compounding Pharmacy and every Tennessee case has been resolved.

Thus, the Court can be confident that the Class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA and the securities laws. Accordingly, NYC Funds' selection of counsel should be approved.

## IV.    CONCLUSION

The NYC Funds has satisfied each of the PSLRA's requirements for appointment as Lead Plaintiff. As such, the NYC Funds respectfully request that the Court appoint it as Lead Plaintiff and approve its selection of Lead and Liaison Counsel.

DATED:  January 26, 2024

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (TN BPR 23045)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Ste. 200
Nashville, TN 37203
Telephone: 615-254-8801
gstranch@stranchlaw.com

*[Proposed] Liaison Counsel for Plaintiff*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll*
Julie Goldsmith Reiser*
Molly Bowen*
Margaret (Emmy) Wydman*
1100 New York Ave NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
mbowen@cohenmilstein.com
ewydman@cohenmilstein.com

*[Proposed] Lead Counsel for Plaintiff*

*\*pro hac vice* forthcoming

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies the foregoing document was filed with the Court's Case Management/Electronic Case Filing System, on January 26, 2024 and served upon the following counsel:

Christopher M. Wood (TN #032977)
Robbins Geller Rudman & Dowd LLP
200 31st Avenue North
Nashville, TN 37203
(615) 244-2203
cwood@rgrdlaw.com

Jerry E. Martin (TN #20193)
Barrett Johnston Martin & Garrison, LLC
200 31st Avenue North
Nashville, TN 37203
615/244-2202
jmartin@barrettjohnston.com

Thomas C. Michaud
Vanoverbeke, Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI 48201
313/578-1200
tmichaud@vmtlaw.com

Steven A. Riley (TN #6258)
Milton S. McGee, III (TN #24150 )
Riley & Jacobson, PLC
1906 West End. Ave.
Nashville, TN 37203
T: (615) 320-3700
sriley@rjfirm.com
tmcgee@rjfirm.com

Peter E. Kazanoff
Amy L. Dawson
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Tel: 212.455.2000
pkazanoff@stblaw.com
amy.dawson@stblaw.com

Jerry E. Martin
Christopher M. Wood
Barrett Johnston Martin & Garrison, LLC
200 31st Avenue North
Nashville, TN 37203
jmarting@barrettjohnston.com
cwood@rgrdlaw.com

Darren J. Robbins
Brian E. Cochran
Robbins Geller Rudman & Dowd, LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
drobbins@rgrdlaw.com
bcochran@rgrdlaw.com

Samuel H. Rudman
Mary K. Blasy
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

Thomas C. Michaud
Vanoverbeke, Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI 48201
tmichaud@vmtlaw.com

<u>/s/ J. Gerard Stranch, IV</u>
J. Gerard Stranch, IV (TN BPR 23045)