UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOLLAR GENERAL CORPORATION, TODD J. VASOS, JEFFREY C. OWEN, JOHN W. GARRATT, and KELLY M. DILTS,<br><br>Defendants. | Case No. 3:23-cv-01250<br>Judge Aleta A. Trauger |

## MEMORANDUM & ORDER

Three sets of plaintiffs have filed Motions for Appointment as Lead Plaintiff in this putative shareholder class action: (1) Universal-Investment-Gesellschaft mbH ("Universal") and Quoniam Asset Management GmbH ("Quoniam") (Doc. No. 27); (2) the Treasurer of the State of North Carolina, on behalf of the North Carolina Retirement Systems, and the North Carolina Department of State Treasurer and the North Carolina Supplemental Retirement Board of Trustees, on behalf of the North Carolina Supplemental Retirement Plans ("North Carolina Funds") (Doc. No. 30); and (3) the New York City Police Pension Fund, the New York City Fire Department Pension Fund, and the Board of Education Retirement System of the City of New York ("NYC Funds") (Doc. No. 35.) Each of those sets of plaintiffs has filed a Response addressing the arguments of the others. (Doc. Nos. 47–49.) For the reasons set out herein, the motions filed by the NYC Funds and the NC Funds will be denied, and the motion filed by Universal and Quoniam will be granted.

## ANALYSIS

### A. Legal Standard

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that, "[n]ot later than 20 days after the date on which [a private securities fraud class action complaint] is filed, the plaintiff or plaintiffs shall cause to be published . . . a notice" informing other potential class members of the complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Then,

> [n]ot later than 90 days after the date on which [the] notice is published . . . , the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . .

15 U.S.C. §78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the plaintiff who "(aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii). "Under Rule 23, there are two requirements for establishing [one's status as the] lead plaintiff: '(1) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (2) the representative parties will fairly and adequately protect the interests of the class." *Burgraff v. Green Bankshares, Inc.*, No. 2:10-CV-00253, 2011 WL 613281, at *3 (E.D. Tenn. Feb. 11, 2011) (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 WL 5173851, at *5 (W.D. Tenn. Dec. 15, 2010)).

**B. Largest Loss**

The initiating plaintiff, the Washtenaw County Employees' Retirement System, has not provided documentation of a specific loss, which the court construes as a concession that it is not entitled to appointment as lead plaintiff. The NYC Funds purport to have suffered $8.8 million in losses, as calculated under the last-in-first-out ("LIFO") accounting method. (Doc. No. 36 at 6.) The NC Funds claim $6.6 million in losses under that method. (Doc. No. 32 at 10.) The LIFO losses claimed by Universal/Quoniam, however, are significantly higher, amounting to $33.4 million in losses. (Doc. No. 28 at 2.) On the face of the parties' assertions, therefore, Universal and Quoniam have claimed the largest loss by a significant margin.

Before the court can give those parties credit for that loss, however, it must resolve a preliminary question: whether Universal and Quoniam, as distinct private entities, should be permitted to aggregate their separate losses together. The PSLRA instructs this court to determine "the most adequate plaintiff," not the most adequate alliance of otherwise unrelated plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). At the same time, however, the PSLRA acknowledges that the "most adequate plaintiff" may be either a "person or group of persons." *Id.* Courts have typically resolved this tension by construing "group" to "mean[] something more than melange or hodgepodge" of parties "who share nothing in common *other than* the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999). Some higher degree of cohesion is necessary. *Id.*

The policy against improperly aggregated plaintiffs groups serves two related purposes. The first purpose is the obvious one: the role of "lead plaintiff" is a singular one and should only be held by a group actually capable of functioning as something comparable to one entity with a

3

Case 3:23-cv-01250    Document 51    Filed 04/04/24    Page 3 of 7 PageID #: 571

single "collective voice." *Id.* The second purpose served by this approach is that, without some limitation on how plaintiffs' groups are formed, the PSLRA lead plaintiff selection process would devolve into a contest of bulk client recruitment between attorneys, with the presumption of lead plaintiff status available not to the party with the greatest stake, but to the otherwise unrelated clients of the attorney who engaged in the most effective mass recruitment. Accordingly, "[t]he aggregation of disparate investors solely for the purpose of establishing a plaintiff group is contrary to the purposes of the PSLRA, and has been strongly disfavored by the courts." *Id.* (collecting cases).

Universal and Quoniam are two independent German institutional investors, but they argue that they should be permitted to act as a group, due to a "long-term business relationship." (Doc. No. 29-4 ¶ 8.) Specifically, the companies say that they "provide each other with, among other things, certain fund administration and portfolio management services," and "Quoniam served as the external investment advisor for several of the Universal funds that incurred losses on Dollar General." (*Id.*) The companies concede, however, that "Universal funds utilize the services of a range of both internal and external investment advisors and portfolio managers." (*Id.* ¶ 8 n.1.)

The connection between Universal and Quoniam is limited enough that it gives the court some pause. Ultimately, however, the court finds that they have made a sufficient showing of cohesion for the court to treat them as a unitary group in this case. Universal and Quoniam are peers with a substantial history of functioning alongside each other in the German investment market. They are, therefore, well-situated to evaluate each other's adequacy as partners in litigation. There is no evidence that their decision to come together was a sham or that either entity bullied, coerced, or deceived the other into teaming up. Nor is there evidence that the combination of the two entities into a single plaintiff group was lawyer-driven. To the contrary, the

4

uncontroverted evidence suggests that it was Universal and Quoniam who took the lead role in deciding to join forces, and litigation counsel was only informed of their decision later in the process. (*Id.* ¶ 10.) The court, accordingly, finds that (1) Universal and Quoniam have adequately established their entitlement to being treated as a single plaintiffs group and (2) that group has established the highest losses.

### C. Typicality/Fair and Adequate Representation

**Typicality.** The typicality requirement of Rule 23 "insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852–53 (6th Cir. 2013). Usually, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992)). Each potential lead plaintiff group can clear this hurdle, as each relevant investor was harmed in the same way by the same events.

**Adequacy and Fairness.** In order to adequately represent a class, "the representative must have common interests with unnamed members of the class, and . . . it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citations omitted). The "common interests" analysis follows the same path as the typicality analysis in this instance. Each proposed lead plaintiff group shares common interests with the putative class as a whole.

5

Case 3:23-cv-01250 Document 51 Filed 04/04/24 Page 5 of 7 PageID #: 573

Insofar as Universal and Quoniam might face an obstacle, then, it would be with regard to adequacy of representation. Neither the NYC Funds nor the NC Funds, however, have identified evidence suggesting that Universal and Quoniam would fall short in that regard. Universal and Quoniam are major institutional investors with a significant, demonstrated familiarity with securities fraud litigation. Their resources and expertise are substantial, and the firm that they have selected as lead counsel is, as the court will discuss in the next section, highly experienced and qualified in the area of securities fraud litigation. The court, therefore, finds that the Universal/Quoniam group has made a sufficient showing to be appointed lead plaintiff.

**E. Selection of Counsel**

Universal and Quoniam ask the court to appoint Bernstein Litowitz Berger & Grossman LLP ("BLB&G") as lead counsel and Sanford Heisler Sharp, LLP ("SHS") as liaison counsel for the class. BLB&G is a major national law firm with substantial expertise litigating—and obtaining favorable outcomes in—securities litigation. BLBG's list of clients involves numerous major institutional investors, ranging from the California Public Employees' Retirement System to TIAA-CREF, and its recoveries in securities cases number in the billions of dollars. (Doc. No. 29-6 at 3–4.) The court has little difficulty concluding that it is well-qualified to serve in the capacity of lead counsel.

In contrast with BLB&G, SHS appears to have relatively little securities fraud experience. Rather, the list of representative matters that SHS has supplied consists mostly, if not entirely, of class action cases in other areas of the law, such as Title VII and ERISA. (*See* Doc. No. 29-9.) If SHS were seeking to play a larger, more substantive role in this litigation, its lack of subject matter experience would present a considerable reason for concern. Liaison counsel, however, is typically only "charged with essentially administrative matters, such as communications between the court

and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), conveying meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions." *Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 197 n.9 (D. Del. 2012) (quoting Manual for Complex Litigation (Fourth) § 10.221 (2005)). The firm's experience with other forms of class action is adequate to prepare it for that role. The court will, therefore, approve both selections of counsel. The court's approval, however, is contingent on the assumption that any assignment of tasks to SHS will be consistent with the ordinary division of labor between lead counsel and liaison counsel.[1]

For the foregoing reasons, the NC Funds' Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel (Doc. No. 30) and the NYC Funds' Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead and Liaison Counsel (Doc. No. 35) are hereby **DENIED**, and Universal/Quoniam's Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Counsel (Doc. No. 27) is hereby **GRANTED**. A plaintiff group consisting of Universal and Quoniam is hereby **APPOINTED** as lead plaintiff, Bernstein Litowitz Berger & Grossman LLP is **APPROVED** as lead counsel, and Sanford Heisler Sharp, LLP is **APPROVED** as liaison counsel.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge

---

[1] If BLB&G and its clients anticipate a desire for the assistance of liaison counsel in a more substantive role, the court may revisit its decision and, if necessary, consider proposed options.