# EXHIBIT 59

JULIE A. SU, Acting Secretary of Labor,
United States Department of Labor,

                    Complainant,

    v.

DOLLAR GENERAL CORPORATION, dba
DOLLAR GENERAL et al,

                    Respondents.

OSHRC Docket Nos.: 22-1016 et al
(Consolidated)

## CORPORATE-WIDE STIPULATION AND SETTLEMENT AGREEMENT

### I.

### Scope and Intent of Settlement Agreement

**Complainant**, Acting Secretary of Labor, United States Department of Labor ("Complainant" or "Acting Secretary"), by and through her attorneys, and **Respondent**, Dollar General Corporation d/b/a Dollar General and its retail subsidiaries listed in Appendix A (collectively "Respondent"), hereby stipulate and agree that:

(A) Complainant cited Respondent for alleged violations of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651, *et seq*. ("the Act" or "OSH Act") and issued Citations and Notifications of Proposed Penalties. Appendix B is a list of those citations with their corresponding inspection numbers, OSHRC docket numbers, and issuance dates.

(B) Respondent is an employer within the meaning of Section 3(5) of the Act. Respondent duly filed with a representative of Complainant notices of intent to contest the citations and proposed penalties. These notices were duly transmitted to the Occupational Safety and Health Review Commission ("Commission"), and it is agreed that jurisdiction of these proceedings is conferred upon said Commission by Section 10(c) of the Act.

(C) Complainant and Respondent ("the Parties") have agreed in this Corporate-Wide Stipulation and Settlement Agreement ("Settlement Agreement") to resolve in full and as described below all matters in the citations identified in Appendix B. This Settlement Agreement also resolves the Secretary's 11(b) petition pending before the Seventh Circuit in Case No. 22-2499 that will be withdrawn with Respondent's non-objection.

(D) Respondent represents that the "Enhanced Abatement Measures" identified in Section IV shall be applied on a corporate-wide basis to all of Respondent's retail stores in the United States, with the exception of "pOpshelf" stores, and to all employees employed at those retail stores covered under the jurisdiction of the U.S. Occupational Safety and Health Administration ("Federal OSHA") (referred to below as "Covered Stores"), unless otherwise specified herein. This Agreement also shall apply to any retail stores opened in the United States, excluding pOpshelf, by Respondent during the term of the Settlement Agreement (as defined in Section II (B)) that are in the jurisdiction of Federal OSHA. During the term of this Settlement Agreement, Respondent also shall provide Complainant annually with a list of Covered Stores, which shall include new stores opened or acquired and shall exclude stores closed or sold in the prior year.

(E) Respondent represents that Appendix A lists all the corporate entities operating Dollar General retail stores, as described in Paragraph D of this Section. During the term of this Settlement Agreement, Respondent also shall provide Complainant annually with a list of corporate entities as described in this Paragraph, which shall include any new or acquired corporate entities.

(F) If ownership of a Covered Store is transferred from one entity to another listed in Appendix A or a new corporate entity during the term of the Settlement Agreement, the acquiring entity shall be deemed legally obligated to continue to comply with the terms of the Settlement Agreement.

(G) The Parties recognize that some of Respondent's stores are located in states that have assumed authority for the enforcement of occupational safety and health standards pursuant to Section 18 of the Act ("State Plan States"). OSHA will notify State Plan States of the Settlement Agreement and encourage them to resolve any pending and potential enforcement actions under the umbrella of this model.

## II.

### Effective Date and Term of Settlement Agreement

(A) The Settlement Agreement shall become effective on the date it is fully executed and signed by both Parties (the "Effective Date").

(B) The terms of the Settlement Agreement shall terminate two years from the Effective Date ("Termination Date"), unless the Parties jointly agree, in writing, to extend the Settlement Agreement, pursuant to Paragraph (C) of this Section or any party terminates the Settlement Agreement pursuant to the early termination provision set forth in Paragraph (D) of this Section. The two-year term of the Settlement Agreement is referred to below as the "Agreement Term."

(C) The Parties shall meet in person or remotely to review performance, progress, and implementation of this Settlement Agreement as described in Section VI, Paragraph (F) and discuss the Agreement Term, including the possibility of extending the

2

Agreement Term pursuant to Paragraph (B) of this Section or terminating the Agreement pursuant to Paragraph (D) of this Section.

(D)     Beginning six months following the Effective Date, if either party seeks early termination of this Agreement, the party shall first provide written notice to the other party of its intent to terminate. Following this notice, the Parties shall meet to confer in good faith about keeping the Settlement Agreement in effect. After this meeting, the Settlement Agreement may be terminated early by any party with 30 days written notice to terminate.

## III.

### Amendment and Resolution of Citation Items

(A)     Complainant has amended the citations as set forth in Appendix C.

(B)     The total amended, combined penalty for all dockets covered by the Settlement Agreement shall be twelve million dollars. Of that total amount, the individual penalty for each citation is set forth in Appendix C.

(C)     Respondent does not object to Complainant amending the Citations as set forth in Section III, Paragraph (A) above.

(D)     Respondent certifies that the specific violative conditions alleged in the above-referenced citations, as amended herein ("Covered Violations"), have been abated or will be abated within 10 days from the Effective Date. The abatement deadlines for the enhanced abatement measures in Section IV, Paragraphs (A) and (B), are set forth below.

(E)     Respondent represents that, for each of the Covered Violations, and for all enhanced abatement measures set forth in Section IV, Paragraphs (A) and (B), abatement verification and certification, as required by 29 C.F.R. 1903.19(c), and abatement documentation, as required by 29 C.F.R. 1903.19(d), shall be signed by an executive or senior director of Respondent and submitted to OSHA's Director (or Acting Director) of its Directorate of Enforcement Programs no later than 30 days from the date of the Commission's final order terminating the proceedings in the dockets covered by the Settlement Agreement, unless otherwise specified herein.

(F)     The Citations and Notifications of Penalties in Section I, Paragraph (A) and Appendix B, as amended by Section III, Paragraph (A), are deemed amended to include the full terms of this Settlement Agreement, including but not limited to all enhanced abatement measures set forth in Section IV, and all implementation dates which are delineated in this Settlement Agreement.

(G)     This Settlement Agreement resolves any open inspections that Federal OSHA has at the date of execution alleging violations at one or more of the Covered Stores of one or more of the following standards: 29 C.F.R. 1910.37(a)(3); 29

3

C.F.R. 1910.176(b) and/or (c) (excluding pest harborage); 29 C.F.R. 1910.36(d)(1) and/or (g); 29 C.F.R. 1910.22(a)(1) and/or (c); 29 C.F.R. 1910.157(c)(1); and 29 C.F.R. 1910.303(g)(1) ("Covered Standards").

## IV.

### Enhanced Abatement Measures

Respondent further states and agrees that it has implemented or will implement all the following enhanced abatement measures at all Covered Stores (unless otherwise specified herein) by the deadlines set forth in this Section. Respondent agrees that it will maintain the enhanced abatement measures in this Section throughout the Agreement Term.

(A) Respondent represents that it has already implemented and agrees to maintain for the Agreement Term the following enhanced abatement measures:

1. **Safety and Health Program:** Respondent represents that it has established and implemented an Injury & Illness Prevention Program that applies to all Covered Stores as described in the Dollar General Safety Policies and Procedures (Rev. 1/18).

2. **Inventory Control, Third Party Consultant, and Root Cause Analysis:** Respondent has retained an independent, third-party consultant ("Consultant") with relevant expertise in the retail industry to make substantial and lasting improvements in Respondent's operations and performance. Respondent relied on the Consultant's findings and recommendations to initiate hazard identification and analysis of enterprise-wide contributing factors as follows:

   i. The Consultant has analyzed Respondent's current operating model, including an assessment of its stores, supply chain, logistics, merchandising, and other technological resources, to identify operational solutions and improvements to various store-level operational challenges, including those that could impact worker safety.

   ii. The Consultant recommended enhancements that revamp product flows to and within the stores to streamline and create more productive backroom receiving areas, reduce overstock, increase storage capacity, and augment operational efficiencies.

   iii. Respondent has internally analyzed and prepared a summary of the Consultant's findings and recommendations, which it shared with OSHA on June 5, 2023 and January 30, 2024, and which Complainant shall treat as proprietary and confidential subject to the Commission's Protective Order dated June 5, 2023.

   iv. Respondent has selected, adopted, and agreed to implement the following Consultant recommendations as enhanced abatement

4

measures within two years of the Effective Date as set forth in Paragraph (B) of this Section: reducing the amount of inventory by stock-keeping unit (SKU) count, reducing the use of floor stands, using closed circuit television (CCTV) cameras to monitor safety issues and to identify stores that may need additional support, and implementing phased distribution enhancements to improve tote assortment and increase stocking efficiency.

3. **<u>Compliance Audits</u>:** Respondent has retained an independent, third-party auditor ("Auditor") to perform unannounced compliance audits annually at all Covered Stores with an area of focus on compliance with the Covered Standards. The Auditor completed the first year of assessments on February 2, 2024 for fiscal year 2023. The Auditor uses observation and a standard set of inquiries, completed in writing, to assess the safety conditions in the store, including the backroom receiving area and sales floor aisles. Respondent uses data from these third-party compliance audits in conjunction with internal data to detect trends and identify stores that require additional support. At each of the Covered Stores where audits are performed, the Auditor performs (and will continue to perform during this Agreement Term) the audits in accordance with the following:

   i. The audits have assessed and shall continue to assess whether: (1) all emergency exit doors and paths to those doors are clear and free of obstructions; (2) pathways to electrical panels are clear and free of obstructions; (3) areas in front of fire extinguishers are visible, unobstructed, and accessible; (4) extension cords and surge protectors are not used in place of permanent electrical wiring; (5) sales floor aisles and hallways are free of obstructions; and (6) totes are stacked no more than six high.

   ii. No prior warning or announcement has been made or shall be made in the future by the Auditor, Respondent, or its agents to a Covered Store prior to visiting that Covered Store to perform the audit.

   iii. Prior to leaving each of the Covered Stores, the Auditor documents its findings and notifies the Store Manager or other key carrier on duty of any safety and/or health issues to be addressed and corrected immediately. Within 24 hours of the visit, the Auditor submits a copy of the report to the store operations team at the corporate office. Respondent shall retain a copy of these reports during the Agreement Term and for one year thereafter.

   iv. After receiving a copy of the audit, the store operations team emails the relevant District Managers, Regional Directors, and Division Vice-Presidents to notify them that an audit of one of the stores in their area

5

of responsibility was completed, with a link to the results. If the audit includes a safety violation, the District Manager is also instructed to contact the Store Manager immediately to ensure that all blocked aisles, exits, electrical panels, and/or fire extinguishers have been cleared and that there is appropriate clearance for all paths of travel to emergency exit doors, electrical panels and fire extinguishers. The Senior Vice Presidents of Store Operations have access to the results of the audits.

v. Weekly, the Executive Vice President of Store Operations receives a summary of audits conducted the prior week and a link to the results.

vi. Respondent analyzes the data collected by the Auditor and uses it to identify trends and to direct attention to stores, markets, or other areas that require further analysis, inquiry, and corrective action.

vii. The Auditor conducts unannounced re-assessments of any stores that did not satisfactorily pass the initial audit.

4. **Designated Safety Staff:** Respondent has created, filled, and will maintain a "Director of Safety" role, or an equivalent, which reports through the Risk Management department. This position is intended to provide leadership and support for overseeing and promoting a culture of safety.

5. **Safety Operations Center:** Respondent has created and will maintain a Safety Operations Center (SOC) to reinforce and drive operational expectations and standards, detect store hazards, and further support safety performance as outlined in the documents produced pursuant to the Commission's Protective Order on June 5, 2023. The SOC became fully operational as of March 4, 2024, and SOC staff report weekly to the Executive Vice President of Store Operations. The SOC reviews the third-party compliance audit data and conducts randomized safety inspections of all Covered Stores via CCTV monitoring at least 26 times per year. Store Operations will continue to work with cross-functional teams involving supply chain and transportation, human resources, as well as real estate and store planning to create sustainable, long-term safety solutions. Store Operations will report monthly to Respondent's Board of Directors. Respondent agrees that the SOC will continue to operate for the Agreement Term in the manner described in this paragraph.

6. **Hotline/QR Code Response Policy and Procedures:** Respondent has contracted with a third-party vendor to manage and maintain a reporting hotline that employees and the public can use to report store issues, including potential safety concerns. Specifically, Respondent has created, and placed in its stores, a sign with a toll-free number that individuals can call to report issues over the phone and a QR code that individuals can use to report issues online.

6

or conditions of employment, including but not limited to terms or conditions related to workplace safety or the functioning of the committee. Nor shall the committee negotiate or agree to any such term. While all final decisions regarding the development and implementation remain solely with Respondent, Respondent shall involve the committee in the following:

i. Developing and implementing Respondent's safety and health program.

ii. Developing and implementing an internal communication plan to encourage employee participation and reinforce management commitment to ensuring workplace safety and health. The communication plan shall allow for the free flow of information between store employees and field management as well as field management and senior leadership to address store concerns and immediately abate hazards.

7. **<u>Inventory Control and Resolution Management</u>:** Respondent shall reduce the use of floor stands by 50 percent; reduce SKU assortment in all Covered Stores by eliminating at least 800 to 1000 SKUs; and implement phased distribution enhancements that improve tote assortment and increase stocking efficiency, as identified by the Consultant and selected by Respondent, during the Agreement Term. The Parties will discuss Respondent's progress on these enhancements and establish timelines for progress, as set forth in the Reporting and Meeting Requirements in Section VI.

8. **<u>Truck Deliveries</u>:** Respondent shall develop and implement policies and procedures to manage truck deliveries as outlined in the document produced pursuant to the Commission's Protective Order on June 5, 2023, and as follows:

i. Regional Directors shall have the authority and discretion to stop a truck delivery when appropriate based on a store's backroom capacity that may create reasonable concerns about emergency exit route and safety conditions. Regional Directors must submit a request to stop a truck before 3 p.m. at least two days after receiving the current week's truck delivery.

ii. Respondent shall develop and implement a communication system for delivery trucks to provide an estimated time of delivery that allows Respondent to plan for delays and allocate resources to unload trucks. Respondent will communicate truck delivery days and estimated times of delivery to field managers using Respondent's scheduling application, Atlas (sometimes referred to as Legion). Automated messages will be sent to the stores two days prior to the delivery day with a carton count and day and time of delivery. If a truck is delayed, the carrier will send a message to the store. In the event of a late notice by the carrier, Respondent will issue labor

9

credits to the store. Respondent will also issue labor credits to a store where GPS data show the delivery was late, or based on carrier communication of late delivery if no GPS data is available. Credits will be communicated to the store and visible in the scheduling system within three days after the scheduled delivery date.

9. **Storage Reminders and Containers:** Respondent shall have brightly colored safety lines or another feasible alternative and "do not block" stickers to ensure clearance around electrical panels and exit doors. Stores with limited backroom receiving storage may request and utilize a storage pod to temporarily manage excess inventory, provided that employees can safely access the storage pods to perform work duties at all times.

10. **Retention of Abatement Records:** Respondent will maintain SOC and related data, including any verification that safety issues identified were corrected, during the Agreement Term.

**V.**

**OSHA Follow-up and Monitoring Inspections**

The parties agree that OSHA has a right of entry to conduct any monitoring inspections during the Agreement Term that are necessary to verify compliance with the provisions in the Settlement Agreement. Respondent shall not require warrants for entry by OSHA into Covered Stores for that purpose and shall not require subpoenas for access to non-privileged documents, witnesses, or other information related to compliance with this Settlement Agreement. Respondent also agrees to provide background information for use in monitoring, including names, titles, and contact information for corporate and local management. The scope of the OSHA monitoring inspections shall be limited to the verification of compliance with this Settlement Agreement unless other non-compliant conditions are observed in the plain view of an OSHA representative during the monitoring inspection. If, pursuant to this section, OSHA identifies alleged non-compliance by a Covered Store with one or more of the following Covered Standards: 29 C.F.R. 1910.37(a)(3); 29 C.F.R. 1910.176(b) and/or (c) (excluding pest harborage); 29 C.F.R. 1910.36(d)(1) and/or (g); 29 C.F.R. 1910.22(a)(1) and/or (c); 29 C.F.R. 1910.157(c)(1); and 29 C.F.R. 1910.303(g)(1), any such alleged noncompliance pursuant to this Section shall be handled in accordance with Section IX of this Settlement Agreement, if applicable.

10

made to apply to any or all of the Covered Stores. The Parties further stipulate and agree that any extension of time approved by OSHA in response to a PMA submitted by Respondent during the term of this Settlement Agreement shall be automatically incorporated into this Settlement Agreement and binding upon the Parties.

## XIV.

### Costs

Each Party hereby agrees to bear its own attorney's fees, costs and other expenses incurred by such Party in connection with any stage of these proceedings, including but not limited to, attorneys' fees which may be available under the Equal Access to Justice Act (EAJA), as amended.

## XV.

### No Alteration of Employee Rights

Nothing in this Settlement Agreement alters in any manner the rights afforded employees under the Act.

Respectfully submitted,

FOR THE COMPLAINANT:                              FOR THE RESPONDENT:

Signed on: **July 11, 2024**                      Signed on: **July 11, 2024**

**SEEMA NANDA**                                   /s/  Eric E. Hobbs
Solicitor of Labor                                **ERIC E. HOBBS**
                                                  Shareholder
**EDMUND C. BAIRD**
Associate Solicitor for                           **Ogletree Deakins**
Occupational Safety and Health                    Pabst Boiler House
                                                  1243 North 10th Street, Suite
/s/  Peter Vassalo                                200
**PETER VASSALO**                                 Milwaukee, WI 53205
Counsel for Special Litigation                    T: 414-239-6414
                                                  eric.hobbs@ogletree.com
/s/ Catherine Seidelman
**CATHERINE SEIDELMAN**                           Attorney for Dollar General
Senior Attorney                                   Corporation d/b/a Dollar General,
                                                  et. al.

/s/  LaNita L. McWilliams
**LANITA L. MCWILLIAMS**
Attorney

U.S. Department of Labor
SOL-OSH Division
200 Constitution Avenue NW, Suite S-4004
Washington, DC 20210
F: (202) 693-5466
vassalo.peter@dol.gov
mcwilliams.lanita@dol.gov

/s/ Rachel Graeber
**RACHEL GRAEBER**
Regional Counsel for OSHA

/s/ Melanie Stratton
**MELANIE STRATTON**
Trial Attorney

/s/ Kathryn Hagerman
**KATHRYN HAGERMAN**
Trial Attorney

U.S. Department of Labor
Atlanta Regional Solicitor's Office
61 Forsyth Street, S.W., Rm 7T10
Atlanta, GA 30303

Attorneys for **JULIE A. SU**
Acting Secretary of Labor, United States
Department of Labor, Complainant

/s/ Steven Deckard
**STEVEN DECKARD**
Senior Vice President of Store
Operations

**APPENDIX E**

# SETTLEMENT AGREEMENT BETWEEN
# DOLLAR GENERAL AND OSHA

On July 11, 2024, Dollar General and the Occupational Safety and Health Administration ("OSHA") entered into a Settlement Agreement resolving citations issued by OSHA. Unless terminated early, the Settlement Agreement ("Agreement") will remain in effect for two years. This Agreement includes commitments by Dollar General designed to enhance store safety and compliance by ensuring that:

- (1) all emergency exit doors and paths to those doors are clear and free of obstructions;
- (2) pathways to electrical panels are clear and free of obstructions;
- (3) areas in front of fire extinguishers are visible, unobstructed, and accessible;
- (4) extension cords and surge protectors are not used in place of permanent electrical wiring;
- (5) sales floor aisles and hallways are free of obstructions; and
- (6) totes, other containers, and loose inventory are stacked and limited in height so that they are stable and secure against sliding and collapse.

This document provides a general summary of the provisions of the Settlement Agreement, including some measures already implemented by Dollar General. If you wish to discuss this Settlement Agreement with someone from Dollar General, please contact your District Manager, Human Resources, or call 1-855-ASK-DGHR.

### Designated Corporate Safety Team and Safety Committee

Dollar General has hired a Director of Safety. Dollar General will hire at least two additional safety managers with workplace safety and health experience to coordinate and implement its safety and health program, which Dollar General has consulted with an independent expert to evaluate and update. Dollar General will also establish a safety and health committee.

### Compliance Audits

Dollar General has retained a third party to perform audits in all stores with an area of focus on compliance with the safety conditions in the store, including the backroom receiving area and sales floor aisles.

### Safety Operations Center

Dollar General has created and will maintain a Safety Operations Center ("SOC") to reinforce and drive operational expectations and standards, detect store safety conditions, and further support safety performance.

E-1

## Hotline/QR Code

Dollar General will maintain a reporting hotline that employees and customers can use to report store issues, including potential safety concerns. A sign will be posted in stores with a toll-free number or QR Code that individuals can anonymously use to report safety concerns. DG will investigate and work promptly with store leaders to resolve reported safety concerns received through the hotline/QR Code.

## Safety and Health Training

Dollar General's executive leadership will complete safety and health training. Dollar General will also provide non-managerial store employees with safety and health training at the time of hire and thereafter on safety and health compliance topics, including, among other things, the safety conditions in the store (including the backroom receiving area, fire extinguishers, and sales floor aisles) and their role under Dollar General's safety and health program.

## Truck Deliveries and Inventory Control

Regional Directors have the authority and discretion to stop a truck delivery when appropriate based on a store's backroom capacity that may create reasonable concerns about emergency exit route and safety conditions. Dollar General will maintain a communication system for delivery trucks to provide an estimated time of delivery that allows Dollar General to plan for delays and allocate resources to unload trucks. Dollar General is committed to implementing improvements to manage inventory and increase stocking efficiency in its stores.

## Storage Reminders and Containers

Dollar General will have brightly colored safety lines or another feasible alternative and "do not block" stickers to ensure clearance around electrical panels and exit doors. Stores with limited backroom receiving storage may request and utilize a storage pod to temporarily manage excess inventory, provided that employees can safely access the storage pods to perform work duties at all times.

## Abatement of Non-Compliance

During the term of the Settlement Agreement, Dollar General will correct, within 48 hours of notice provided by OSHA under the procedures set forth in the Agreement, any non-compliant store conditions or be subject to stipulated penalties defined by the Agreement. Dollar General also will provide OSHA with a description of the corrective steps it has taken. If Dollar General does not do so, OSHA may conduct an on-site inspection of the store in issue and issue citations for any non-compliance it finds.