# EXHIBIT 67

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934 (Amendment No.   )

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐   Preliminary Proxy Statement

☐   **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☒   Definitive Proxy Statement

☐   Definitive Additional Materials

☐   Soliciting Material under §240.14a-12

## Dollar General Corporation

(Name of Registrant as Specified in Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check all boxes that apply):

☒   No fee required

☐   Fee paid previously with preliminary materials

☐   Fee computed on table in exhibit required by Item 25(b) per Exchange Act Rules 14a-6(i)(1) and 0-11

EXECUTIVE COMPENSATION

## Option Exercises and Stock Vested During Fiscal 2021

| Name | Option Awards | | Stock Awards | |
| --- | --- | --- | --- | --- |
| | Number of Shares Acquired on Exercise (#)[1] | Value Realized on Exercise ($)[2] | Number of Shares Acquired on Vesting (#)[3] | Value Realized on Vesting ($)[4] |
| Mr. Vasos | 592,650 | 75,969,713 | 89,359 | 18,086,262 |
| Mr. Garratt | 85,850 | 10,001,586 | 15,634 | 3,164,322 |
| Mr. Owen | — | — | 17,608 | 3,563,859 |
| Ms. Taylor | 42,648 | 5,237,927 | 15,520 | 3,141,248 |
| Mr. Wenkoff | 9,900 | 1,288,692 | 14,580 | 2,950,992 |

(1)   Represents the gross number of option shares exercised, without deduction for shares that may have been surrendered or withheld to satisfy the exercise price or applicable tax withholding obligations.

(2)   Value realized is calculated by multiplying the gross number of options exercised by the difference between the market price of our common stock at exercise as reported by the NYSE and the exercise price.

(3)   Represents the gross number of shares acquired upon vesting of PSUs, without deduction for shares that may have been withheld to satisfy applicable tax withholding obligations.

(4)   Value realized is calculated by multiplying the gross number of shares vested by the closing market price of our common stock on the vesting date as reported by the NYSE.

## Pension Benefits Fiscal 2021

We have omitted the Pension Benefits table because it is inapplicable.

## Nonqualified Deferred Compensation Fiscal 2021

Information regarding each named executive officer's participation in our CDP/SERP Plan is included in the following table. The material terms of the CDP/SERP Plan are described after the table. Please also see "Benefits and Perquisites" in "Compensation Discussion and Analysis" above. We have omitted from this table the column pertaining to "Aggregate Withdrawals/Distributions" during the fiscal year because it is inapplicable.

| Name | Executive Contributions in Last FY ($)[1] | Registrant Contributions in Last FY ($)[2] | Aggregate Earnings in Last FY ($)[3] | Aggregate Balance at Last FYE ($)[4] |
| --- | --- | --- | --- | --- |
| Mr. Vasos | 675,003 | 53,003 | 95,305 | 2,692,381 |
| Mr. Garratt | 126,509 | 25,091 | 41,298 | 627,505 |
| Mr. Owen | 42,262 | 27,676 | 42,406 | 478,688 |
| Ms. Taylor | 715,787 | 166,217 | 63,636 | 2,242,143 |
| Mr. Wenkoff | 179,361 | 15,495 | 26,262 | 505,861 |

(1)   Of the reported amounts, the following are reported in the Summary Compensation Table as "Salary" for 2021: Mr. Vasos ($67,503); Mr. Garratt ($39,703); Mr. Owen ($42,262); Ms. Taylor ($31,306); and Mr. Wenkoff ($61,348).

(2)   Reported as "All Other Compensation" in the Summary Compensation Table.

(3)   The amounts shown are not reported in the Summary Compensation Table because they do not represent above-market or preferential earnings.

(4)   Of the amounts reported, the following were previously reported as compensation for years prior to 2021 in a Summary Compensation Table: Mr. Vasos ($2,004,178); Mr. Garratt ($430,401); Mr. Owen ($275,198); Ms. Taylor ($1,362,036); and Mr. Wenkoff ($167,587).

## EXECUTIVE COMPENSATION

Retirement of any of the Business Protection Provisions, then any of the 2020 PSUs and 2021 PSUs that vested following the Early Retirement shall immediately be forfeited and subject to clawback and any unvested 2020 PSUs and 2021 PSUs shall immediately be forfeited and cancelled. See "Payments After a Change in Control" for a discussion of treatment of the 2020 Adjusted EBITDA PSUs and the 2021 PSUs awarded to Mr. Vasos if he terminates employment due to Early Retirement within two years following a change in control.

## Payments Upon Voluntary Termination

The payments to be made upon other voluntary termination scenarios vary depending upon whether the resignation occurs with or without "good reason" (as defined in the governing agreement) or after our failure to offer to renew, extend or replace the applicable employment agreement under certain circumstances.

### *Voluntary Termination with Good Reason or After Failure to Renew the Employment Agreement*

If a named executive officer resigns with good reason, he or she will forfeit all then unvested equity awards and generally may exercise any outstanding vested options up to 90 days following the resignation date. If a named executive officer resigns under the circumstances described in (2) below, his or her equity will be treated as described under "Voluntary Termination without Good Reason" below. See "Payments After a Change in Control" for a discussion of treatment of equity awards if a named executive officer resigns with good reason within two years following a change in control.

If a named executive officer resigns (1) with good reason after giving 30 days (90 days in the case of Mr. Vasos) written notice within 30 days after the event purported to give rise to the claim for good reason and opportunity for us to cure any such claimed event within 30 days after receiving such notice, or (2) within 60 days (90 days in the case of Mr. Vasos) of our failure to offer to renew, extend or replace his or her employment agreement before, at or within 6 months (1 year in the case of Mr. Vasos) after the end of the agreement's term (unless we enter into a mutually acceptable severance arrangement or the resignation is a result of the officer's retirement or termination other than for good reason), then in each case the officer will receive the following benefits generally on or beginning on the 60th day after termination of employment but contingent upon the execution and effectiveness of a release of certain claims in the form attached to the employment agreement:

- Continuation of base salary, generally as in effect immediately before the termination, for 24 months payable in accordance with our normal payroll cycle and procedures.

- A lump sum payment of: (1) for Mr. Vasos, two times the amount of his annual target bonus under our annual bonus program in respect of the fiscal year in which his termination occurs; and (2) for each other named executive officer, two times the amount of the average percentage of target bonus paid to such officer under our annual bonus program with respect to our two most recently completed fiscal years (not including a fiscal year for which financial performance has not yet been certified) for which annual bonuses have been paid to executives under such program multiplied by such officer's (A) target bonus level and (B) base salary (in each case, as applicable as of the date immediately preceding the employment termination or, if the termination is for good reason due to the reduction of the officer's target bonus level or base salary, then his or her target bonus level and base salary applicable immediately prior to such reduction). If no bonus was paid to such officer with respect to one or both of the applicable fiscal years due to Dollar General's performance or to individual performance (as opposed to ineligibility due to length of employment), then such bonus amount shall be zero in calculating the average. If the named executive officer was not eligible for a bonus with respect to one of the two applicable fiscal years due to length of employment, then such amount shall be calculated based upon the percentage of target bonus to such officer for the applicable fiscal year for which a bonus was paid. If no bonus was paid to the named executive officer with respect to the applicable fiscal years due to length of employment, then no such amount shall be paid.

- Mr. Vasos also will receive a lump sum payment, payable when annual bonuses are paid to our other executives, of a pro-rata portion of the annual bonus, if any, that he would have been entitled to receive for the fiscal year of termination, if such termination had not occurred, based on our performance for the fiscal year in which his employment terminates, multiplied by a fraction, the numerator of which is the number of days during which he was employed by us in the fiscal year and the denominator of which is 365.

- A lump sum payment of two times our annual contribution that would have been made in respect of the plan year in which such termination occurs for the named executive officer's participation in our pharmacy, medical, dental and vision benefits programs.

- Reasonable outplacement services until the earlier of one year or subsequent employment.

Case 3:23-cv-01250    Document 78-67    Filed 11/15/24    Page 4 of 5 PageID #: 2633

# Security Ownership of Officers and Directors

The following table pertains to beneficial ownership of our directors, nominees and named executive officers individually and to our current directors and all of our current executive officers as a group. These persons may be contacted at our executive offices.

| Name of Beneficial Owner | Amount and Nature of Beneficial Ownership[1][2] | Percent of Class |
|---|---|---|
| Warren F. Bryant | 39,473 | * |
| Michael M. Calbert[3] | 110,582 | * |
| Patricia D. Fili-Krushel[4] | 27,352 | * |
| Timothy I. McGuire | 6,819 | * |
| William C. Rhodes, III[5] | 49,988 | * |
| Debra A. Sandler | 1,259 | * |
| Ralph E. Santana | — | — |
| Todd J. Vasos | 424,771 | * |
| John W. Garratt | 55,467 | * |
| Jeffery C. Owen | 226,402 | * |
| Rhonda M. Taylor | 98,350 | * |
| Carman R. Wenkoff | 97,139 | * |
| All current directors and executive officers as a group (17 persons)[3][4][5] | 1,373,628 | * |

* Denotes less than 1% of class.

(1) Share totals have been rounded to the nearest whole share.

(2) Includes the following number of shares (1) underlying RSUs (including RSUs credited, where applicable, as a result of dividend equivalents earned with respect to the RSUs) and earned PSUs that are or could be settleable within 60 days of March 16, 2022, over which the person will not have voting or investment power until the applicable RSUs and PSUs are settled, and (2) subject to options exercisable either currently or within 60 days of March 16, 2022, over which the person will not have voting or investment power until exercised: Mr. Bryant (2,831 RSUs; 8,833 options); Mr. Calbert (22,873 RSUs; 8,833 options); Ms. Fili-Krushel (781 RSUs; 8,833 options); Mr. McGuire (781 RSUs); Mr. Rhodes (781 RSUs); Ms. Sandler (781 RSUs); Mr. Vasos (81,216 PSUs; 169,006 options); Mr. Garratt (13,758 PSUs; 23,155 options); Mr. Owen (16,573 PSUs; 181,938 options); Ms. Taylor (13,881 PSUs; 60,140 options); Mr. Wenkoff (13,151 PSUs; 73,383 options); and all current directors and executive officers as a group (31,182 RSUs; 152,386 PSUs; 715,400 options). Such shares are considered outstanding for computing the percentage owned by each named person and by the group but not for any other person. Excludes shares underlying RSUs that are vested but deferred at the election of Ms. Sandler and Mr. Santana, but over which such persons will not have voting or investment power until the applicable RSUs are settled on a date that is later than 60 days after March 16, 2022.

(3) Mr. Calbert shares voting and investment power over 65,953 shares with his spouse, Barbara Calbert, as co-trustee of The Michael and Barbara Calbert 2007 Joint Revocable Trust.

(4) Ms. Fili-Krushel shares voting and investment power over 7,591 shares with her spouse, Kenneth Krushel.

(5) Mr. Rhodes shares voting and investment power over 16,367 shares with his spouse, Amy Rhodes, as power of attorney of The Amy Plunkett Rhodes Revocable Living Trust, dated July 30, 2014.

# Delinquent Section 16(a) Reports

The U.S. securities laws require our executive officers, directors and greater than 10% shareholders to file reports of ownership and changes in ownership on Forms 3, 4 and 5 with the SEC. Based solely upon a review of these reports furnished to us during and with respect to 2021, or written representations that no Form 5 reports were required, we believe that each of those persons filed, on a timely basis, the reports required by Section 16(a) of the Exchange Act, except that Mr. Owen filed one Form 4 in 2021 (representing one transaction during 2021) that was not reported on a timely basis. The untimely Form 4 was filed to correct an otherwise timely filed Form 4 which, due to a third party reporting error, underreported the number of shares withheld for the payment of taxes in connection with the vesting and payment of certain PSUs.

Case 3:23-cv-01250    Document 78-67    Filed 11/15/24    Page 5 of 5 PageID #: 2634