## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DOLLAR GENERAL CORPORATION, TODD J. VASOS, JEFFERY C. OWEN, JOHN W. GARRATT, and KELLY M. DILTS<br><br>Defendants. | Civil Action No. 3:23-cv-01250<br><br>CLASS ACTION<br><br>Judge Aleta A. Trauger |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR
LEAVE TO FILE A THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... iii

GLOSSARY ............................................................................................................................ v

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ........................................................................................................ 3

      A. Procedural Background........................................................................................ 3

      B. Summary Of Plaintiffs' Claims ......................................................................... 4

      C. The Court's Order Dismissing The Prior Complaint............................................. 6

      D. The TAC Adds New Facts Addressing The Courts' Stated Concerns ................... 7

III. ARGUMENT.............................................................................................................. 7

      A. Legal Standard .................................................................................................. 7

      B. Defendants Face No Undue Prejudice ................................................................. 8

      C. The Proposed Amendment Is Not Futile ............................................................. 9

      D. There Is No Bad Faith Or Undue Delay ............................................................. 15

IV. CONCLUSION......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)..................................................................................................14

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) .................................................................................12, 13

*Edwards v. Life Ins. Co. of N. Am.*,
2009 WL 129799 (E.D. Tenn. Jan. 16, 2009)...........................................................9

*In re Firstenergy Corp. Secs. Litig.*,
2022 WL 681320 (S.D. Ohio Mar. 7, 2022)...........................................................11

*Foman v. Davis*,
371 U.S. 178 (1962)....................................................................................................7

*Greenwald v. Holstein*,
2016 WL 9344297 (S.D. Ohio Feb. 3, 2016)............................................................9

*In re Hayes Lemmerz Int'l, Inc. Equity Secs. Litig.*,
271 F. Supp. 2d 1007 (E.D. Mich. 2003)..................................................................8

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) ................................................................... *passim*

*Lynn v. Helf*,
2013 WL 5375292 (M.D. Tenn. Sept. 25, 2013)....................................................8

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2002) ................................................................... *passim*

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
877 F.3d 687 (6th Cir. 2017) .................................................................................14

*Partner & Partner, Inc. v. ExxonMobil Oil Corp.*,
326 Fed. App'x 892 (6th Cir. May 4, 2009) .........................................................15

*Plagens v. Deckard*,
2023 WL 2711263 (N.D. Ohio Mar. 30, 2023) .....................................................10

*Price v. Noble*,
2020 WL 13984253 (N.D. Ohio Jan. 14, 2020)........................................................8

*Rose v. Hartford Underwriters Ins. Co.*,
203 F.3d 417 (6th Cir. 2000) ..................................................................................9

*Smith v. Robbins & Myers, Inc.*,
2012 WL 5845072 (S.D. Ohio Nov. 19, 2012)................................................................15

**STATUTES AND RULES**

15 U.S.C. §78u-4 ............................................................................................................2, 8

17 C.F.R. §240.10b-5........................................................................................................5, 14

Fed. R. Civ. P. 12(b)(6)........................................................................................................9

Fed. R. Civ. P. 15............................................................................................................1, 7, 9

iv

**GLOSSARY**

| Term | Description |
|---|---|
| "¶__" | Citations to "¶_" refer to paragraphs in the proposed Third Consolidated Amended Complaint attached as Exhibit A to Plaintiffs' Motion for Leave to File the Third Amended Complaint. |
| "Class Period" | May 28, 2020 to August 28, 2024, inclusive. |
| "Complaint or "TAC" | The proposed Third Consolidated Amended Complaint, which is attached to Plaintiffs' Motion for Leave to File the Third Amended Complaint as a clean copy (*see* Exhibit A) and as a redline against the Second Consolidated Amended Complaint (ECF No. 73, the "SAC") (*see* Exhibit B). |
| "Defendants" | Defendants Dollar General, Vasos (CEO), Garratt (CFO), Owen (COO/CEO), and Dilts (CFO). |
| "Dilts" | Defendant Kelly M. Dilts (CFO). |
| "Dollar General" or the "Company" | Dollar General Corporation. |
| "Ex. A" or "Exhibit A" | Plaintiffs' proposed TAC submitted in clean as an exhibit herewith. |
| "Ex. B" or "Exhibit B" | Plaintiffs' proposed TAC submitted in redline against the Second Consolidated Amended Complaint as an exhibit herewith. |
| "Executive Defendants" | Defendants Vasos (CEO), Garratt (CFO), Owen (COO/CEO), and Dilts (CFO). |
| "FE" or "FEs" | Former employees of Dollar General referenced in the TAC. |
| "Garratt" | Defendant John W. Garratt (CFO). |
| "GAAP" | Generally Accepted Accounting Principles. |
| "Misstatements" | False and misleading statements or omissions alleged in the Complaint. |
| "Motion" | Plaintiffs' Motion for Leave to File the TAC. |
| "Order" | Judge Trauger's June 24, 2025 opinion and order on Defendants' Motion to Dismiss. ECF Nos. 88-89. |

| Term | Description |
|---|---|
| "OSHA Stipulation" | Corporate-Wide Stipulation and Settlement Agreement between the Department of Labor and Dollar General dated July 11, 2024. |
| "Owen" | Defendant Jeffrey C. Owen (COO/CEO). |
| "Plaintiffs" | Lead Plaintiffs Universal-Investment-Gesellschaft mbH and Quoniam Asset Management GmbH |
| "SAC" | The Second Consolidated Amended Complaint, filed on October 17, 2024. *See* ECF No. 73. |
| "Vasos" | Defendant Todd J. Vasos (CEO). |

Pursuant to Federal Rule 15, and the Court's July 14, 2025 order (ECF No. 92), Lead Plaintiffs Universal-Investment-Gesellschaft mbH and Quoniam Asset Management GmbH ("Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for Leave to File the Third Amended Complaint (the "TAC").[1] Plaintiffs have attached the proposed amendment in clean (**Exhibit A**) and as a redline against the prior complaint (**Exhibit B**).

## I.      INTRODUCTION

Plaintiffs respectfully request leave to file the TAC, which remedies the grounds for dismissal identified by the Court in its June 24, 2025 order (the "Order"). In the Order, the Court dismissed the prior complaint based on its finding that Plaintiffs did not adequately allege Defendants' knowing or reckless deception of investors—*i.e.*, scienter. Plaintiffs' proposed TAC adds new facts to address the scienter-related concerns that the Court identified in the Order. Accordingly, Plaintiffs respectfully submit that they should be granted leave to file the TAC.

Plaintiffs' request is governed by Rule 15(a)(2), which mandates that leave to amend should be "freely" granted. The Sixth Circuit has explained that "Rule 15 plainly embodies a liberal amendment policy" and leave to amend should only be denied "where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) ("[I]n the securities litigation context, leave to amend is particularly appropriate where the complaint does not allege fraud with particularity"). These factors favor granting leave here.

First, Defendants face no undue prejudice. Plaintiffs' amendment pleads new facts that support the same securities claims and legal theories that they previously pled and address the

---

[1] Capitalized terms are defined in the Glossary. Unless otherwise indicated, all emphasis is added and all internal citations are omitted. Citations to "¶_" refer to paragraphs in the TAC (Ex. A).

concerns identified by the Court in the Order. Thus, the proposed amendment is not prejudicial because it "does not add new substantive claims or overhaul plaintiffs' theory of the case, but merely attempts to remedy the defects identified by the [court]." *Morse*, 290 F.3d at 801. Also, the PSLRA's discovery stay remains in effect, so there are no "duplicative discovery" issues. *Id.*

Second, Plaintiffs' proposed amendment is not futile, as it pleads new facts specifically addressing the scienter-related concerns that the Court identified in the Order.[2] For example, the Court considered emails sent by former Dollar General employees directly to Defendants Vasos, Owen, and Garratt regarding the inventory and other problems at Dollar General. The Court rejected these emails as contributing to the inference of scienter based on its finding that there was no allegation that "Defendants actually read or responded to the emails" and because the Court found it "plausible" that Defendants "may not manage their own inboxes and are not consulted about [such] emails." ECF No. 88 at 19-20. To address the Court's concerns, the TAC alleges new facts reported by a former employee who worked directly with Defendants explaining that, pursuant to well-established Company practices, Defendants read these emails and were consulted about them by the underlings who followed up on them. These emails therefore powerfully contribute to the strong inference of Defendants' scienter, especially considered with the myriad other facts showing scienter alleged in the TAC.

As another example, the Court rejected former employee reports that Defendants discussed the excess inventory problems during meetings because the prior complaint did not specifically state that the former employees personally attended the meetings. *Id.* at 21. The TAC has remedied this issue with reports confirming former employees' firsthand attendance at meetings with

---

[2] In seeking leave to amend, Plaintiffs' motion focuses on the scienter concerns identified by the Court in its Order. To the extent that Defendants oppose leave to amend on bases that were *not* addressed by the Court in its Order, Plaintiffs reserve all rights to address those issues on reply.

Defendants where the inventory problems were discussed and providing other corroborating details such as dates, attendees, and specifics concerning the meetings and/or discussions.

By way of further illustration, the Court held that the prior complaint's allegations of insider trading by Defendants Vasos and Garratt could not show scienter because they did not explain why the two other Executive Defendants (Owen and Dilts) did *not* engage in similarly suspicious insider trades. *Id.* at 16-17. The TAC explains that, as newly promoted C-level officers, Defendants Owen and Dilts had to increase their Company stock holdings during the Class Period to meet Company executive stock holding requirements, which effectively precluded them from selling any meaningful holdings of Dollar General stock. The TAC also addresses other concerns raised by the Court and pleads securities violations. Thus, amendment is not futile.

Third, there is no bad faith or undue delay here. Plaintiffs have not engaged in any "cat and mouse [ ] gamesmanship." *Morse*, 290 F.3d at 800. On the contrary, the Court dismissed the prior complaint without prejudice and expressly afforded Plaintiffs the opportunity to replead. ECF No. 88 at 32-33. There also is no undue delay because Plaintiffs diligently pursued amendment in accordance with the August 25, 2025 deadline set by the Court. ECF No. 92.

In sum, Plaintiffs respectfully submit that they should be granted leave to file the TAC.

## II. BACKGROUND

### A. Procedural Background

This Action was commenced on November 27, 2023. ECF No. 1. On April 4, 2024, the Court appointed Plaintiffs as Lead Plaintiffs. ECF No. 51. On June 17, 2024, Plaintiffs filed the Consolidated Amended Complaint. ECF No. 63. On October 9, 2024—prior to Defendants' filing any motion to dismiss—Plaintiffs filed a motion for leave to file the SAC based on additional developments that occurred in July 2024 and August 2024, which Defendants did not oppose. ECF No. 71. On October 15, 2024, the Court permitted Plaintiffs to file the SAC. ECF No. 72.

3

**B. Summary Of Plaintiffs' Claims**

Dollar General is one of the largest discount retailers in the U.S. ¶3. The Company's business depends on it having effective inventory management systems and controls to track and account for inventory. *Id.* It also must have adequate staffing in stores to receive and manage this inventory. *Id.* During the Class Period, Defendants assured investors that the Company had these critical features in place. For example, Defendants repeatedly touted the Company's "efficient management" of inventory (¶279) and claimed that they "closely monitor[ed] and manag[ed]" inventory balances (¶277). Defendants also touted Dollar General's "record staffing levels" (¶388) and "proactive" investments in the Company's staffing (¶381).

Defendants' statements were materially misleading. Unknown to investors, Dollar General's inventory controls were fundamentally broken during the Class Period and Defendants' staffing practices were inadequate. Dozens of the Company's own former employees consistently reported that Dollar General's inventory controls were woefully deficient or nonexistent, which caused a massive build-up of excess inventory in stores and distribution centers. ¶¶50-171. At the Company's distribution centers, excess product piled up and shipping trucks waited to be unloaded, incurring millions of dollars of fees as they idled. ¶62-63, 69, 73-74, 76, 95. Rather than properly address (or disclose) this glut of excess inventory, Defendants would (i) stuff the excess inventory into off-site warehouses, where the Company did not track inventory (¶¶63, 77); (ii) dispose of the inventory without properly accounting for it (¶¶138-171); and/or (iii) force ship the inventory to stores that had no need or capacity to store it (¶¶51, 142, 183). *See also* ¶¶205, 289, 495. At the store level, the piles of inventory were so excessive that they overflowed from stockrooms, lined the corridors at stores, and blocked fire exits. ¶¶109, 174, 182, 187-88, 194-96, 198-200. As such, Company stores faced dangerous and unsafe work conditions, which in turn subjected it to a litany of regulatory investigations and ultimately cost the Company millions in

4

penalties for workplace safety violations under the federal Occupational Safety and Health Act (OSHA). ¶¶187-208.

The many reports from former Dollar General Employees told the same story: Dollar General's inventory system was a "house of cards" or a "shell game," that was "built on sand," and, like the Titanic, was "go[ing] down." ¶¶62, 65, 71, 145, 168. Defendants knew about these problems. Indeed, Dollar General employees directly emailed Defendants to flag the excess inventory chaos plaguing the Company. ¶¶52-53, 56-57, 58, 97-98, 111, 136, 505. Defendants had their subordinates respond to ensure that the problems were not publicly disclosed. ¶¶52, 57-58, 505. The problems were also discussed in internal Company meetings. ¶¶66, 82, 100-03, 105-06, 122-25, 135-36, 177, 505.

Defendants' decision to understaff Dollar General's stores exacerbated these inventory problems. ¶¶172-86. Defendants publicly touted that the Company staffed its stores with five or more employees. ¶¶172, 174, 186. However, former employees reported that, in truth, Defendants' strategy was to "***limit payroll to the bone***," and stores were often staffed with just one single worker. ¶¶93, 174, 186, 380. Defendants' strategy severely underequipped the Company's employees to deal with the stockpiles of excess inventory clogging stores. Company employees also could not properly price inventory, causing widespread discrepancies between shelf and register prices and costing Dollar General millions to settle consumer protection actions brought by multiple state regulators. ¶¶209-15, 511-12.

The truth concerning Defendants' misrepresentations emerged through a series of corrective disclosures during the Class Period. ¶¶216-74. Yet even as the truth emerged, Defendants concealed the true extent and severity of the problems. *Id.* By the time the complete truth was fully revealed on August 29, 2024, the Company's share price plummeted to a Class

5

Period low of $84.03 per share and billions of dollars in shareholder value had been erased. ¶¶274, 592.

Plaintiffs assert claims under Section 10(b) of the Exchange Act, as well as Rule 10b-5(a), (b), and (c) and Item 303(a) of Regulation S-K, arising from Defendants' false and misleading statements concerning Dollar General's inventory, staffing, pricing, and accounting practices. ¶¶501-03. In addition, Plaintiffs advance claims under Section 20(a) against the Executive Defendants, who controlled Dollar General during the Class Period. ¶¶37-40, 618-23. Finally, Plaintiffs assert insider trading claims under Section 20A due to Defendant Vasos's and Garratt's sales of Dollar General stock while in possession of material, nonpublic adverse information concerning Dollar General's inventory, earnings, staffing, pricing, and accounting practices. ¶¶516-22.

### C.    The Court's Order Dismissing The Prior Complaint

In the Order, the Court held that the prior complaint did not adequately plead scienter under the factors in *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001). *See* ECF No. 88. To start, the Court rejected the SAC's insider trading allegations under *Helwig* factor 1. *Id.* at 15-17. The Court acknowledged Defendants Vasos's and Garratt's insider sales but rejected their contribution to the inference of scienter based on its finding that the SAC did not allege an explanation as to why other Defendants (Owen and Dilts) did not engage in insider trading. *Id.* at 15-16.

The Court also held that the SAC did not sufficiently allege scienter based on Defendants' receipt of internal reports of contrary information under *Helwig* factors 2 and 6. For example, the Court found that there was no allegation that Defendants reviewed the emails sent to them—and inferred that Defendants likely did not maintain their own email inboxes. *Id.* at 17-27. The Court also held that former employees did not state that they personally attended Company meetings discussing the inventory and staffing problems or provide other details. *Id*. at 21.

6

Further, the Court found that the SAC's allegations of other civil and regulatory actions did not satisfy *Helwig* factor 5. *Id.* at 28-29. The Court discounted these allegations because it found that the SAC did not allege that these actions "significantly overlap[ped]" with the subject matter of Defendants' misstatements to investors. *Id.* at 29. The Court also held that the SAC did not allege that any of the "settlements or investigations were secret." *Id.*

Additionally, the Court held that *Helwig* factor 7 was absent because, although the SAC alleged that Defendants made misleading accounting statements, it did not specifically allege that those disclosures required a high degree of sophistication to understand. *Id.* at 29-30.

Lastly, the Court found that *Helwig* factor 9 did not support scienter because the SAC did not allege sufficient personal motives for Defendants to engage in fraud. *Id.* at 30-32.

### D. The TAC Adds New Facts Addressing The Courts' Stated Concerns

Based on Plaintiffs' continued investigation, the TAC adds new facts to address the concerns identified by the Court, including *e.g.* that Defendants read and were consulted about the emails sent to them (¶¶52-53, 56-57, 58, 97-98, 111, 136, 505), internal meetings where former employees specifically confirmed their attendance and provided other details (¶¶66, 82, 100-03, 105-06, 122-25, 135-36, 177, 505), and that Dilts and Owen did not engage in insider sales because they were restrained by Dollar General's share ownership requirements, which required them to increase their Dollar General stock holdings during the Class Period (¶¶528-33).

## III. ARGUMENT

### A. Legal Standard

Under Federal Rule 15(a)(2), a "court should freely give leave [to amend] when justice so requires." The Sixth Circuit has recognized that "Rule 15 plainly embodies a liberal amendment policy." *Morse*, 290 F.3d at 800 ("[i]n the securities litigation context, leave to amend is particularly appropriate where the complaint does not allege fraud with particularity"). Denial of

leave to amend is only appropriate if there is "undue delay, bad faith or dilatory motive […], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party […], futility of the amendment, etc." *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). None of these factors are present here. Thus, leave to amend should be granted.

### B. Defendants Face No Undue Prejudice

It is well established that leave to amend should be granted where "the [ ] proposed [ ] amended complaint does not add new substantive claims or overhaul plaintiffs' theory of the case, but merely attempts to remedy the defects identified by the [court]." *Morse*, 290 F.3d at 801.

This is true here. The TAC does not advance new claims, it only adds new facts supporting the same securities claims advanced previously, and the new facts "merely … remedy" the concerns identified by the Court. *Id.* While Defendants will face "another round of motion practice," that "does not rise to the level of prejudice that would warrant denial of leave to amend." *Id.* Further, the PSLRA's discovery stay remains in effect, so granting the TAC will not require Defendants to engage in discovery now. *Id.* (no undue prejudice "in light of the discovery stay").

Further, the case is in its early stages, has undergone only one motion to dismiss, and the Order was the Court's first ruling on the pleadings. The absence of any "repeated failure to satisfy the pleading requirements" undermines any claim of prejudice and warrants leave to amend. *In re Hayes Lemmerz Int'l, Inc. Equity Secs. Litig.*, 271 F. Supp. 2d 1007, 1019 n.9 (E.D. Mich. 2003) (noting that, "[w]hile there has been one [a]mended [c]omplaint, it was amended to add the Company's February 2002 announcement that the restatement would be much larger than previously announced and to remove the bankrupt company as a Defendant, not in response to a finding of deficiency by this Court" and granting leave to amend to remedy scienter deficiencies).

Thus, if leave to file the TAC is granted, Defendants will not face any undue prejudice. *E.g.*, *Lynn v. Helf*, 2013 WL 5375292, at \*2 n.2 (M.D. Tenn. Sept. 25, 2013) ("The prejudice to

8

the current defendants is limited […]. Discovery has not begun and … plaintiffs have not added any claims or appreciably changed their theories of liability.").

Given the lack of undue prejudice, Defendants face the burden of establishing one of the other potential grounds for denying the Motion. *See Price v. Noble*, 2020 WL 13984253, at *2 (N.D. Ohio Jan. 14, 2020). Defendants cannot satisfy their burden here.

### C. The Proposed Amendment Is Not Futile

Courts deny leave to amend on futility grounds only where the proposed amendment "appear[s] facially meritless such that the district court's consideration of whether it states an actionable claim would be an empty exercise." *Morse*, 290 F.3d at 801. A court must "make[] no determination as to the merits of [a plaintiff's] claim." *Edwards v. Life Ins. Co. of N. Am.*, 2009 WL 129799, at *3 (E.D. Tenn. Jan. 16, 2009). "A proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).[3]

Where "the proposed amendments are plausible on their face and where there exist substantial arguments on whether or not plaintiff will ultimately prevail on the new claim, the amendment should be permitted." *Greenwald v. Holstein*, 2016 WL 9344297, at *5 (S.D. Ohio Feb. 3, 2016). Here, the proposed amendment is not futile because the TAC adds new facts that address the grounds for dismissal identified by the Court in the Order, as summarized below.

First, the TAC contains numerous new facts addressing the Court's concerns regarding scienter under *Helwig* factors 2 and 6. For example, the TAC adds facts from FE-25 confirming that Defendants Vasos, Owen, and Garrett reviewed the emails that were sent to them regarding

---

[3] Because the Rule 15 futility standard is the same as the Rule 12(b)(6) motion to dismiss standard, Defendants should not be able to both oppose leave to amend and bring a subsequent motion to dismiss. Plaintiffs will oppose any such effort for Defendants to have two bites at the same apple.

9

the excess inventory problems at the heart of this case and they were kept in the loop regarding their underlings' follow-up with the former employees regarding the complaints. ¶¶96-98, 111, 505. FE-25's firsthand knowledge is corroborated by the fact that she worked as an executive assistant with the Company's C-suite, which included Defendants, and specifically worked for Defendant Owen (then COO, later CEO). *Id.* These new facts squarely address the Court's grounds for discounting the SAC's allegations from FE-1 and FE-2 that they emailed the Executive Defendants about the inventory problems in Dollar General stores. ECF No. 88 at 20. Taken together holistically with the prior allegations concerning these emails, these new facts powerfully confirm Defendants' scienter.

Additionally, the TAC contains new facts reported by multiple FEs showing that the Executive Defendants personally attended and participated in meetings and discussions about Dollar General's inventory and staffing problems. For example, one former employee reported having personal meetings with Defendant Vasos (CEO) where she discussed inventory problems with him, including so Vasos could approve expenditures for the Company to buy trailers to store excess inventory. ¶¶12, 99-103, 505. She also reported to Vasos that these trailers did not solve the excess inventory problems because the merchandise in them was not entered into the Company's inventory management system. ¶101. Another former employee reported personally attending meetings held on August 1 annually where the inventory problems were discussed with Defendants Vasos (CEO), Owen (COO/CEO), Garratt (CFO), and Dilts (CFO). ¶105.

These new facts in the TAC show that the Executive Defendants were aware of the inventory and staffing problems they misrepresented and concealed from investors. Thus, the inference of Defendants' scienter is cogent and at least as compelling as any competing inference. *Plagens v. Deckard*, 2023 WL 2711263, at *27 (N.D. Ohio Mar. 30, 2023) (scienter based on

10

defendants' access to "internal company records" concerning deficiencies contradicting their statements, allegations that these "reports were known to [d]efendants," and that the "concerns [were raised] with four unnamed executives"). Indeed, another former employee reported that Defendant Vasos was involved in efforts to hide excess inventory during investor visits, including based on her personal involvement in three instances where this happened. ¶¶167-69.

Second, the TAC contains new facts to address the Court's concerns about Defendants Vasos's and Garratt's insider trading under *Helwig* factor 1. For example, in response to the Court's observation that the SAC did not allege their base compensation levels (ECF No. 88 at 15 n.11), the TAC includes that information. *See* ¶520 (Vasos); ¶522 (Garratt). The TAC adds that Vasos pocketed nearly $284 million from insider sales during the Class Period, which averaged to approximately ***$66 million*** per year and significantly exceeded his annual base salary of ***$1,340,000 to $1,400,000*** per year. ¶¶518-20. Similarly, the $31.6 million that Garratt reaped from insider sales, an average of $7.5 million per year, significantly exceeded his annual base salary of $725,000 to $850,000. ¶¶521-22. The substantial proceeds from these Defendants' stock sales "produce a suspicion that they might have had an incentive to commit fraud." ECF No. 88 at 15.

Further, the Court expressed concern that the SAC did not explain the lack of alleged insider sales by Defendants Owen and Dilts. *Id.* at 17. The TAC adds new facts showing that, as newly promoted C-level officers, Owen and Dilts were subjected to Company share ownership policies that required them to ***increase*** their Dollar General stock holdings during the Class Period. ¶¶523-33. In other words, Owen and Dilts did not sell meaningful amounts of stock during the Class Period because they were required to increase their holdings to meet the Company's executive stock holding requirements. *In re Firstenergy Corp. Secs. Litig.,* 2022 WL 681320, at *19 n.22 (S.D. Ohio Mar. 7, 2022) (finding that "[t]he incompleteness or absence of suspicious

11

stock sales by other Officer Defendants does not negate their scienter" even without an explanation as to why certain defendants did not engage in suspicious sales—unlike the new facts in the TAC).

Third, the TAC addresses the Court's concerns under *Helwig* factor 5 regarding the ancillary actions and investigations. Here, the TAC adds new facts clarifying that the subject matter of these ancillary actions and investigations did "significantly overlap" with Defendants' misrepresentations. For example, the TAC details that the OSHA settlement that Dollar General entered into contained extensive remedial measures to address the inventory and staffing problems at issue (*e.g.*, ¶¶207, 507)—the subject of Defendants' inventory and staffing misstatements. Further bolstering the inference of scienter, the TAC details that OSHA required these reforms to be implemented by Dollar General's CEO (Vasos) and "all other senior executive leadership" and mandated that the Company's "senior leadership" review the Company's compliance with the OSHA Stipulation on a quarterly basis. ¶¶207, 507.

In addition, the TAC addresses the Court's concern that none of the settlements were allegedly "secret," (ECF No. 88 at 28) by specifying that Wisconsin regulators' charges against Dollar General were resolved through a non-public settlement agreement. ¶214. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 687 (6th Cir. 2005) ("secret" settlements of ancillary claims were probative of scienter).

Fourth, the TAC adds allegations in response to the Court's stated concern that *Helwig* factor 7 did not apply. As the Court noted, "*Helwig* factor 7 is the confusing disclosure of accounting information such that its negative implications could only be understood by highly sophisticated people." ECF No. 88 at 29. To address the Court's concern, the TAC explains that Defendants' application of LIFO to report Dollar General's inventory calculations was confusing and led to "misperceptions in the marketplace." *E.g.*, ¶554. For instance, Credit Suisse reported

that "DG believes net LIFO will be more or less neutral to earnings in 2023 *and this is not clearly understood based on our calls*," and "*it is unclear how much DG has raised (and will continue to raise) prices to mitigate LIFO headwinds*." *E.g.*, *id.*. These new facts show that "only someone with a high level of sophistication could have understood the negative implications from [the company's] accounting disclosures," which the Court recognized supports scienter. ECF No. 88 at 30; *see also Bridgestone Corp.,* 399 F.3d at 687 (finding that company's "1999 Annual Report, by combining its statement of accounting policy with its silence," contributed to inference of scienter).

Fifth, the TAC directly addresses the Court's concern that the SAC did not show that Defendants had any "unique" personal financial motives incentivizing them to mislead investors. For example, each of the Executive Defendants was enrolled in short- and long-term incentive compensation programs that rewarded them with cash payouts and stock shares in direct proportion to the amount of Operating Profit that Dollar General reported. ¶¶534-52. These compensation programs gave the Executive Defendants personal financial motive to misrepresent and conceal the inventory and staffing problems that would reduce Dollar General's Operating Profit. *Id*. Indeed, as the TAC explains, that is exactly what happened in 2023, when the truth began to emerge and Dollar General was forced to address the inventory and staffing problems, it cost the Company hundreds of millions of dollars and resulted in Defendants not receiving any bonus or performance shares that year. ¶548; *see Bridgestone Corp.*, 399 F.3d at 684-85 (scienter reinforced by allegations that executives concealed "serious problems …. so they could report huge profits and their executives could retain their positions of power, prestige and profit").

Sixth, the TAC amply alleges the other elements of Plaintiffs' securities law claims,

including those that the Court did not address in its Order.[4] For example, as to falsity, the TAC alleges that Defendants publicly assured investors that they "efficient[ly] manage[d]" and "closely monitor[ed]" the Company's inventory—while, in reality, they knew that the Company was plagued by a massive glut of excess inventory and deficient internal controls to manage, track, and account for vast amounts of inventory. ¶¶277, 279. Similarly, while Defendants claimed that Dollar General had "very robust" staffing levels and "record low store manager turnover," in reality, the Company's stores were severely understaffed, plagued by high turnover rates, and fined millions for workplace safety violations. ¶¶388, 409. Relatedly, Defendants represented that Company stores were staffed by five employees—when only one employee would be staffed, as reported by multiple former employees. ¶¶172, 174, 186, 209-15, 511-12. The TAC pleads robust facts showing that Defendants' misstatements and omissions were materially misleading.

The TAC also explains that the proposed class is entitled to a presumption of reliance pursuant to the fraud-on-the-market doctrine because, at all relevant times, the market for Dollar General's common stock was efficient. ¶594 (specifying multiple indicia of market efficiency). A presumption of reliance is also appropriate under *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972), because Defendants omitted disclosure of the inventory and staffing problems at Dollar General, which was material information they were obligated to disclose. ¶596.

The TAC also readily satisfies the pleading requirements for loss causation, which do not "impose a great burden." *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.,* 877 F.3d 687, 695 (6th Cir. 2017). The TAC details both the corrective information disclosed and the resulting declines

---

[4] Here, Plaintiffs refer to, and expressly incorporate by reference herein, their Memorandum of Law in Opposition to Defendants' prior Motion to Dismiss (ECF No. 84), which sets forth detailed reasons establishing that Plaintiffs have adequately alleged the other elements of their securities law claims, including, for example, falsity, reliance, and loss causation.

14

in Dollar General's stock price, as surprised investors learned the true nature and depth of the Company's problems. ¶¶216-74. For example, after Dollar General reported declining profits due to "***increased markdowns,***" "***increased inventory damages,***" and "***increased shrink***" on August 29, 2024, the Company's stock price declined by over 32% and erased billions in shareholder value. ¶¶271-74. In sum, the proposed amendment is not futile because the TAC adequately alleges each of the required elements to state a claim under Section 10(b).[5]

*   *   *

Thus, Plaintiffs' request for leave to file the TAC is not futile, and the Court should permit it to be filed. *Smith v. Robbins & Myers, Inc.*, 2012 WL 5845072, at *4 (S.D. Ohio Nov. 19, 2012) ("it is quite common for a plaintiff to file a motion to amend in order to cure deficiencies").

### D. There Is No Bad Faith Or Undue Delay

Plaintiffs' amendment is not proposed in bad faith. The Court dismissed Plaintiffs' prior complaint without prejudice and contemplated that Plaintiffs would have the opportunity to amend. ECF No. 88 at 33. Plaintiffs' proposed amendment addresses the specific scienter concerns expressed by the Court in the Order, which was the first and only adjudication of whether Plaintiffs meet the applicable pleading standards. Thus, there is not any "cat and mouse [ ] gamesmanship" here that the Sixth Circuit held could indicate bad faith. *Morse*, 290 F.3d at 800.

There also is no undue delay. "Delay alone is not a sufficient reason to deny leave to amend,

---

[5] None of the other claims in the TAC are futile. The TAC adequately pleads a Section 20(A) insider trading claim because Defendants traded Company shares while in possession of material non-public information concerning Dollar General's inventory, earnings, staffing, pricing, and accounting practices. ¶¶516-22, 624-33. The TAC pleads a Rule 10(b)-5(a) and (c) claim by alleging that Defendants carried out a scheme to deceive investors about Dollar General's inventory and staffing deficiencies, including through their "deceptive act" of disseminating false assurances about these issues. ¶¶20, 40, §IV, 606-16. The TAC also adequately pleads a Section 20(a) control person claim by alleging a predicate violation and culpable control by Defendants. ¶¶37-40, 618-23.

15

but notice and substantial prejudice are critical factors in the determination." *Partner & Partner, Inc. v. ExxonMobil Oil Corp.*, 326 Fed. App'x 892, 899 (6th Cir. May 4, 2009). Here, Plaintiffs expeditiously filed their motion for leave to amend on the schedule ordered by the Court. ECF No. 92. Further, Plaintiffs coordinated with Defendants to ensure they had sufficient notice of the anticipated motion to amend.

## IV. CONCLUSION

For the reasons set forth herein and in their forthcoming reply papers, Plaintiffs respectfully submit that they have adequately pleaded claims that Defendants violated the federal securities laws, leave should be granted to file the proposed Third Amended Complaint, and the Action should be allowed to proceed into discovery.

16

DATED: August 25, 2025                    Respectfully submitted,

**SANFORD HEISLER SHARP, LLP**

*/s/ Kristi S. McGregor*
Kristi S. McGregor (GA Bar No. 674012)
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7001
Facsimile: (615) 434-7020
kmcgregor@sanfordheisler.com

*Liaison Counsel for Lead Plaintiff Universal and Quoniam and Liaison Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jeremy P. Robinson*
Salvatore J. Graziano (admitted *pro hac vice*)
Jeremy P. Robinson (admitted *pro hac vice*)
Alexander Noble (admitted *pro hac vice*)
Jonathan D'Errico (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
jeremy@blbglaw.com
alexander.noble@blbglaw.com
jonathan.derrico@blbglaw.com

*Counsel for Lead Plaintiff Universal and Quoniam and Lead Counsel for the Class*

17