# EXHIBIT 25

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

# SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934 (Amendment No.   )

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐   Preliminary Proxy Statement

☐   **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☒   Definitive Proxy Statement

☐   Definitive Additional Materials

☐   Soliciting Material under §240.14a-12

## Dollar General Corporation

(Name of Registrant as Specified in Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check all boxes that apply):

☒   No fee required

☐   Fee paid previously with preliminary materials

☐   Fee computed on table in exhibit required by Item 25(b) per Exchange Act Rules 14a-6(i)(1) and 0-11



On behalf of the Board of Directors, thank you for your continued support of Dollar General

# DEAR FELLOW SHAREHOLDER,

The 2022 Annual Meeting of Shareholders of Dollar General Corporation will be held on Wednesday, May 25, 2022, at 9:00 a.m., Central Time, at the Goodlettsville City Hall Auditorium, 105 South Main Street, Goodlettsville, Tennessee. All shareholders of record at the close of business on March 16, 2022, are invited to attend the annual meeting. For security reasons, however, to gain admission to the meeting you will be required to present photo identification and comply with other security measures.

We thank those of you who met with us over the past year and provided valuable feedback on broad-ranging topics such as corporate governance, environmental and social matters, human capital management, Board refreshment and composition, and our executive compensation program structure. In 2021, we invited shareholders representing approximately 60% of shares outstanding to participate in our annual ESG outreach program and ultimately engaged with shareholders comprising over 53% of shares outstanding. As Chairman of both the Board and the Nominating and Governance Committee, I led the engagement with shareholders representing over 31% of shares outstanding. The information we received during this engagement helped to inform decisions regarding the enhanced disclosures in this Proxy Statement and in our *Serving Others* report to be published in 2022 and provided further support for the Board's decision to implement a shareholder special meeting right at a 25% ownership threshold. We are committed to continuing our dialogue with our shareholders and appreciate your engagement with us.

Your interest in Dollar General and your vote are very important to us. Whether or not you plan to attend the annual meeting, please vote at your earliest convenience.

On behalf of the Board of Directors, thank you for your continued support of Dollar General.

**SINCERELY,**

**MICHAEL M. CALBERT**
CHAIRMAN OF THE BOARD
APRIL 1, 2022

# TABLE OF CONTENTS

**DOLLAR GENERAL**

**SOLICITATION, MEETING AND VOTING INFORMATION** — **1**

**PROPOSAL 1:**
**Election of Directors** — **4**

**CORPORATE GOVERNANCE** — **10**

**DIRECTOR COMPENSATION** — **16**

**DIRECTOR INDEPENDENCE** — **18**

**TRANSACTIONS WITH MANAGEMENT AND OTHERS** — **19**

**EXECUTIVE COMPENSATION** — **20**
Compensation Discussion and Analysis — 20
Compensation Committee Report — 30
Summary Compensation Table — 31
Grants of Plan-Based Awards in Fiscal 2021 — 33
Outstanding Equity Awards at 2021 Fiscal Year-End — 34
Option Exercises and Stock Vested During Fiscal 2021 — 36
Pension Benefits Fiscal 2021 — 36
Nonqualified Deferred Compensation Fiscal 2021 — 36
Potential Payments Upon Termination or Change in Control — 37

Compensation Committee Interlocks and Insider Participation — 45
Compensation Risk Considerations — 45
Pay Ratio Disclosure — 45

**SECURITY OWNERSHIP** — **46**
Security Ownership of Certain Beneficial Owners — 46
Security Ownership of Officers and Directors — 47
Delinquent Section 16(a) Reports — 47

**PROPOSAL 2:**
**Advisory Vote to Approve Named Executive Officer Compensation** — **48**

**AUDIT COMMITTEE REPORT** — **49**

**PROPOSAL 3:**
**Ratification of Appointment of Auditors** — **50**

**FEES PAID TO AUDITORS** — **51**

**PROPOSAL 4:**
**Shareholder Proposal Requesting Political Spending Disclosure** — **52**

**SHAREHOLDER PROPOSALS FOR 2023 ANNUAL MEETING** — **54**

**IMPORTANT NOTICE REGARDING THE AVAILABILITY OF PROXY MATERIALS FOR THE SHAREHOLDER MEETING TO BE HELD ON MAY 25, 2022**

**This Proxy Statement, our 2021 Annual Report and a form of proxy card are available at www.proxyvote.com.** You will need your Notice of Internet Availability or proxy card to access the proxy materials.

As permitted by rules adopted by the Securities and Exchange Commission ("SEC"), we are furnishing our proxy materials over the Internet to some of our shareholders. This means that some shareholders will not receive paper copies of these documents but instead will receive only a Notice of Internet Availability containing instructions on how to access the proxy materials over the Internet and how to request a paper copy of our proxy materials, including the Proxy Statement, our 2021 Annual Report, and a proxy card. Shareholders who do not receive a Notice of Internet Availability will receive a paper copy of the proxy materials by mail, unless they have previously requested delivery of proxy materials electronically.

# PROXY STATEMENT

This document is the proxy statement of Dollar General Corporation that we use to solicit your proxy to vote upon certain matters at our Annual Meeting of Shareholders to be held on Wednesday, May 25, 2022. We will begin mailing to shareholders printed copies of this document and the form of proxy or the Notice of Internet Availability on or about April 1, 2022.

We include website addresses throughout this proxy statement for reference only. The information contained in these websites is not incorporated by reference into this proxy statement.

---

**RECORD DATE:**

March 16, 2022

---

# SOLICITATION, MEETING AND VOTING INFORMATION

## What is Dollar General Corporation and where is it located?

Dollar General Corporation (NYSE: DG) has been delivering value to shoppers for more than 80 years. Dollar General helps shoppers Save time. Save money. Every day!® by offering products that are frequently used and replenished, such as food, snacks, health and beauty aids, cleaning supplies, basic apparel, housewares and seasonal items at everyday low prices in convenient neighborhood locations. Dollar General operated 18,190 stores in 47 states as of February 25, 2022. Our principal executive offices are located at 100 Mission Ridge, Goodlettsville, Tennessee 37072.

We refer to our company as "we," "us" or "Dollar General." Unless otherwise noted or required by the context, "2022," "2021," "2020" and "2019" refer to our fiscal years ending or ended February 3, 2023, January 28, 2022, January 29, 2021, and January 31, 2020, respectively.

## What is a proxy and who is asking for it and paying for the cost to solicit it?

A proxy is your legal designation of another person, called a "proxy," to vote your stock. The document designating someone as a proxy is also called a proxy or a proxy card.

Our directors, officers and employees are soliciting your proxy on behalf of our Board of Directors and will not be specially paid for doing so. Solicitation of proxies by mail may be supplemented by telephone, email and other electronic means, advertisements, personal solicitation, news releases issued by Dollar General, postings on our website or otherwise. Dollar General will pay all expenses of this solicitation.

## Who may attend the annual meeting?

Only shareholders as of the Record Date, their proxy holders and our invited guests may attend the annual meeting. To be admitted to the meeting, you must present a government-issued photo identification, such as a driver's license, state-issued ID card or passport, and proof of share ownership as of the Record Date. To prove ownership, shareholders of record will be verified against our list of registered shareholders, while street name shareholders must show: an account statement showing the share ownership as of the Record Date; a copy of the voting instruction form provided by, or a valid legal proxy from, the broker, trustee, bank or nominee holding the shares; a letter from a broker, trustee, bank or nominee holding the shares confirming the beneficial owner's ownership as of the Record Date; or other similar evidence of ownership. **We reserve the right to deny admittance to anyone who does not comply with these requirements.**

We will decide in our sole discretion whether your documentation meets the admission requirements. If you hold shares in a joint account, both owners can be admitted to the meeting if proof of joint ownership is provided and you both provide identification.

## Where can I find directions to the annual meeting?

Directions to Goodlettsville City Hall, where we will hold the annual meeting, are posted on our website at https://investor.dollargeneral.com.

## Will the annual meeting be webcast?

Yes. A live webcast of the annual meeting, including the question and answer session, will be available on https://investor.dollargeneral.com under "News and Events— Events and Presentations" at 9:00 a.m., Central Time, on May 25, 2022. Within 24 hours following the

Case 3:23-cv-01250     Document 99-25     Filed 10/24/25     Page 5 of 11 PageID #: 4049

EXECUTIVE COMPENSATION

# Outstanding Equity Awards at 2021 Fiscal Year-End

The table below sets forth information regarding awards granted under our Amended and Restated 2007 Stock Incentive Plan and held by our named executive officers as of the end of fiscal 2021. We have omitted from this table the column for "Equity Incentive Plan Awards: Number of Securities Underlying Unexercised Unearned Options" because it is inapplicable. All awards included in the table, to the extent they have not vested, are subject to certain accelerated vesting provisions as described in "Potential Payments upon Termination or Change in Control." PSUs reported in the table are payable in shares of our common stock on a one-for-one basis.

| | | Option Awards | | | | Stock Awards | | | |
|---|---|---|---|---|---|---|---|---|---|
| Name | Grant Date | Number of Securities Underlying Unexercised Options (#) Exercisable | Number of Securities Underlying Unexercised Options (#) Unexercisable | Option Exercise Price ($) | Option Expiration Date | Number of Shares or Units of Stock That Have Not Vested (#) | Market Value of Shares or Units of Stock That Have Not Vested ($)[1] | Equity Incentive Plan Awards: Number of Unearned Shares, Units or Other Rights That Have Not Vested (#) | Equity Incentive Plan Awards: Market or Payout Value of Unearned Shares, Units or Other Rights That Have Not Vested ($)[1] |
| Mr. Vasos | 03/21/2018 | — | 39,299[2] | 92.98 | 03/21/2028 | — | — | — | — |
| | 03/20/2019 | — | 64,198[2] | 117.13 | 03/20/2029 | — | — | — | — |
| | 03/17/2020 | 33,433[2] | 100,290[2] | 154.53 | 03/17/2030 | — | — | — | — |
| | 03/16/2021 | — | 122,977[2] | 193.55 | 03/16/2031 | — | — | — | — |
| | 03/20/2019 | — | — | — | — | 58,221[3] | 11,896,297 | — | — |
| | 03/17/2020 | — | — | — | — | 28,494[4] | 5,822,179 | 42,741[5] | 8,733,269 |
| | 03/16/2021 | — | — | — | — | 26,240[6] | 5,361,619 | 40,140[7] | 8,201,806 |
| Mr. Garratt | 03/21/2018 | — | 6,877[2] | 92.98 | 03/21/2028 | — | — | — | — |
| | 03/20/2019 | — | 10,832[2] | 117.13 | 03/20/2029 | — | — | — | — |
| | 03/17/2020 | — | 17,829[2] | 154.53 | 03/17/2030 | — | — | — | — |
| | 03/16/2021 | — | 19,676[2] | 193.55 | 03/16/2031 | — | — | — | — |
| | 03/20/2019 | — | — | — | — | 9,824[3] | 2,007,338 | — | — |
| | 03/17/2020 | — | — | — | — | 5,066[4] | 1,035,136 | 7,599[5] | 1,552,704 |
| | 03/16/2021 | — | — | — | — | 4,199[6] | 857,982 | 6,423[7] | 1,312,412 |
| Mr. Owen | 08/25/2015 | 35,703[8] | — | 73.73 | 08/25/2025 | — | — | — | — |
| | 03/16/2016 | 32,890[2] | — | 84.67 | 03/16/2026 | — | — | — | — |
| | 03/22/2017 | 37,686[2] | — | 70.68 | 03/22/2027 | — | — | — | — |
| | 03/21/2018 | 22,107[2] | 7,368[2] | 92.98 | 03/21/2028 | — | — | — | — |
| | 03/20/2019 | 12,439[2] | 12,438[2] | 117.13 | 03/20/2029 | — | — | — | — |
| | 08/27/2019 | 4,816[8] | 4,816[8] | 138.75 | 08/27/2029 | — | — | — | — |
| | 03/17/2020 | 8,172[2] | 24,516[2] | 154.53 | 03/17/2030 | — | — | — | — |
| | 03/16/2021 | — | 25,464[2] | 193.55 | 03/16/2031 | — | — | — | — |
| | 03/20/2019 | — | — | — | — | 11,278[3] | 2,304,434 | — | — |
| | 03/17/2020 | — | — | — | — | 6,966[4] | 1,423,363 | 10,446[5] | 2,134,431 |
| | 03/16/2021 | — | — | — | — | 5,434[6] | 1,110,329 | 8,310[7] | 1,697,982 |
| Ms. Taylor | 03/21/2018 | 20,633[2] | 6,877[2] | 92.98 | 03/21/2028 | — | — | — | — |
| | 03/20/2019 | 11,236[2] | 11,234[2] | 117.13 | 03/20/2029 | — | — | — | — |
| | 03/17/2020 | 5,574[2] | 16,713[2] | 154.53 | 03/17/2030 | — | — | — | — |
| | 03/16/2021 | — | 18,519[2] | 193.55 | 03/16/2031 | — | — | — | — |
| | 03/20/2019 | — | — | — | — | 10,189[3] | 2,081,918 | — | — |
| | 03/17/2020 | — | — | — | — | 4,750[4] | 970,568 | 7,122[5] | 1,455,238 |
| | 03/16/2021 | — | — | — | — | 3,951[6] | 807,308 | 6,045[7] | 1,235,175 |

Case 3:23-cv-01250    Document 99-25    Filed 10/24/25    Page 6 of 11 PageID #: 4050

EXECUTIVE COMPENSATION

Retirement of any of the Business Protection Provisions, then any of the 2020 PSUs and 2021 PSUs that vested following the Early Retirement shall immediately be forfeited and subject to clawback and any unvested 2020 PSUs and 2021 PSUs shall immediately be forfeited and cancelled. See "Payments After a Change in Control" for a discussion of treatment of the 2020 Adjusted EBITDA PSUs and the 2021 PSUs awarded to Mr. Vasos if he terminates employment due to Early Retirement within two years following a change in control.

## Payments Upon Voluntary Termination

The payments to be made upon other voluntary termination scenarios vary depending upon whether the resignation occurs with or without "good reason" (as defined in the governing agreement) or after our failure to offer to renew, extend or replace the applicable employment agreement under certain circumstances.

### *Voluntary Termination with Good Reason or After Failure to Renew the Employment Agreement*

If a named executive officer resigns with good reason, he or she will forfeit all then unvested equity awards and generally may exercise any outstanding vested options up to 90 days following the resignation date. If a named executive officer resigns under the circumstances described in (2) below, his or her equity will be treated as described under "Voluntary Termination without Good Reason" below. See "Payments After a Change in Control" for a discussion of treatment of equity awards if a named executive officer resigns with good reason within two years following a change in control.

If a named executive officer resigns (1) with good reason after giving 30 days (90 days in the case of Mr. Vasos) written notice within 30 days after the event purported to give rise to the claim for good reason and opportunity for us to cure any such claimed event within 30 days after receiving such notice, or (2) within 60 days (90 days in the case of Mr. Vasos) of our failure to offer to renew, extend or replace his or her employment agreement before, at or within 6 months (1 year in the case of Mr. Vasos) after the end of the agreement's term (unless we enter into a mutually acceptable severance arrangement or the resignation is a result of the officer's retirement or termination other than for good reason), then in each case the officer will receive the following benefits generally on or beginning on the 60th day after termination of employment but contingent upon the execution and effectiveness of a release of certain claims in the form attached to the employment agreement:

- Continuation of base salary, generally as in effect immediately before the termination, for 24 months payable in accordance with our normal payroll cycle and procedures.

- A lump sum payment of: (1) for Mr. Vasos, two times the amount of his annual target bonus under our annual bonus program in respect of the fiscal year in which his termination occurs; and (2) for each other named executive officer, two times the amount of the average percentage of target bonus paid to such officer under our annual bonus program with respect to our two most recently completed fiscal years (not including a fiscal year for which financial performance has not yet been certified) for which annual bonuses have been paid to executives under such program multiplied by such officer's (A) target bonus level and (B) base salary (in each case, as applicable as of the date immediately preceding the employment termination or, if the termination is for good reason due to the reduction of the officer's target bonus level or base salary, then his or her target bonus level and base salary applicable immediately prior to such reduction). If no bonus was paid to such officer with respect to one or both of the applicable fiscal years due to Dollar General's performance or to individual performance (as opposed to ineligibility due to length of employment), then such bonus amount shall be zero in calculating the average. If the named executive officer was not eligible for a bonus with respect to one of the two applicable fiscal years due to length of employment, then such amount shall be calculated based upon the percentage of target bonus to such officer for the applicable fiscal year for which a bonus was paid. If no bonus was paid to the named executive officer with respect to the applicable fiscal years due to length of employment, then no such amount shall be paid.

- Mr. Vasos also will receive a lump sum payment, payable when annual bonuses are paid to our other executives, of a pro-rata portion of the annual bonus, if any, that he would have been entitled to receive for the fiscal year of termination, if such termination had not occurred, based on our performance for the fiscal year in which his employment terminates, multiplied by a fraction, the numerator of which is the number of days during which he was employed by us in the fiscal year and the denominator of which is 365.

- A lump sum payment of two times our annual contribution that would have been made in respect of the plan year in which such termination occurs for the named executive officer's participation in our pharmacy, medical, dental and vision benefits programs.

- Reasonable outplacement services until the earlier of one year or subsequent employment.

Case 3:23-cv-01250     Document 99-25     Filed 10/24/25     Page 7 of 11 PageID #: 4051

Any amounts owed to a named executive officer in the form of salary continuation that would otherwise have been paid during the 60-day period after termination will instead be payable in a single lump sum on the 60th day after such termination and the remainder will be paid in the form of salary continuation payments over the remaining 24-month period as set forth above.

In certain cases, some or all of the payments and benefits provided on termination of employment may be delayed for six months following termination to comply with the requirements of Section 409A of the Internal Revenue Code. Any payment required to be delayed would be paid at the end of the six-month period in a lump sum, and any payments due after the six-month period would be paid at the normal payment date provided for under the applicable employment agreement.

To the extent permitted by law, if we reasonably believe a named executive officer engaged in conduct during employment that would have resulted in termination for cause, any unpaid severance amounts under the applicable employment agreement may be forfeited and we may seek to recover any severance amounts paid under the applicable employment agreement.

The named executive officer will forfeit any unpaid severance amounts, and we retain any other rights we have available under law or equity, upon a material breach of any continuing obligation under the applicable employment agreement or the release, which include the following business protection provisions (the "Business Protection Provisions"):

- Such officer must maintain the confidentiality of, and refrain from disclosing or using, our (a) trade secrets for any period of time as the information remains a trade secret under applicable law and (b) confidential information for a period of two years following the termination date.

- For two years after the termination date, such officer may not accept or work in a "competitive position" in a state where we maintain stores at the termination date or where we plan to open stores within six months of that date. "Competitive position" includes any employment, consulting, advisory, directorship, agency, promotional or independent contractor arrangement between the named executive officer and any person or entity engaged wholly or in material part in the business in which we are engaged (including, but not limited to, those entities identified in the applicable employment agreement), or any person or entity then planning to enter the discount consumable basics retail business, if such officer is required to perform services which are substantially similar to those he or she provided or directed at any time while employed by us.

- For two years after the termination date, such officer may not recruit or induce any of our exempt

employees to leave our employ and may not solicit or communicate with anyone who has a business relationship with us and with whom such officer had contact while employed by us if it would likely interfere with our business relationships or result in an unfair competitive advantage over us.

In addition, each named executive officer's rights, payments and benefits with respect to any incentive compensation (whether cash or equity) shall be subject to any reduction, cancellation, forfeiture or recoupment, in whole or in part, upon the occurrence of certain specified events, as may be required by any applicable law, rule or regulation, by any applicable national exchange, or by a separate Dollar General clawback or recoupment policy.

### *Voluntary Termination without Good Reason*

If a named executive officer otherwise resigns without good reason, he or she will forfeit all then unvested equity awards and generally may exercise any outstanding vested options up to 90 days following the resignation date.

## Payments Upon Involuntary Termination

The payments to be made to a named executive officer upon involuntary termination vary depending upon whether termination is with or without "cause" (as defined in the governing document).

### *Involuntary Termination with Cause*

Upon an involuntary termination with cause, a named executive officer will forfeit all unvested equity awards, all vested but unpaid PSUs and all vested but unexercised options.

### *Involuntary Termination without Cause*

Upon an involuntary termination without cause, a named executive officer:

- Will forfeit all then unvested equity awards.

- Generally may exercise any outstanding vested options up to 90 days following the termination date.

- Will receive the same severance payments and benefits on the same terms and conditions (except for the notice and cure provisions) as described under "Voluntary Termination with Good Reason or After Failure to Renew the Employment Agreement" above.

See "Payments After a Change in Control" for a discussion of the treatment of equity awards if the officer is involuntarily terminated without cause within two years following a change in control.

Case 3:23-cv-01250     Document 99-25     Filed 10/24/25     Page 8 of 11 PageID #: 4052

## Security Ownership of Officers and Directors

The following table pertains to beneficial ownership of our directors, nominees and named executive officers individually and to our current directors and all of our current executive officers as a group. These persons may be contacted at our executive offices.

| Name of Beneficial Owner | Amount and Nature of Beneficial Ownership[1][2] | Percent of Class |
|---|---|---|
| Warren F. Bryant | 39,473 | * |
| Michael M. Calbert[3] | 110,582 | * |
| Patricia D. Fili-Krushel[4] | 27,352 | * |
| Timothy I. McGuire | 6,819 | * |
| William C. Rhodes, III[5] | 49,988 | * |
| Debra A. Sandler | 1,259 | * |
| Ralph E. Santana | — | — |
| Todd J. Vasos | 424,771 | * |
| John W. Garratt | 55,467 | * |
| Jeffery C. Owen | 226,402 | * |
| Rhonda M. Taylor | 98,350 | * |
| Carman R. Wenkoff | 97,139 | * |
| All current directors and executive officers as a group (17 persons)[3][4][5] | 1,373,628 | * |

* Denotes less than 1% of class.

(1) Share totals have been rounded to the nearest whole share.

(2) Includes the following number of shares (1) underlying RSUs (including RSUs credited, where applicable, as a result of dividend equivalents earned with respect to the RSUs) and earned PSUs that are or could be settleable within 60 days of March 16, 2022, over which the person will not have voting or investment power until the applicable RSUs and PSUs are settled, and (2) subject to options exercisable either currently or within 60 days of March 16, 2022, over which the person will not have voting or investment power until exercised: Mr. Bryant (2,831 RSUs; 8,833 options); Mr. Calbert (22,873 RSUs; 8,833 options); Ms. Fili-Krushel (781 RSUs; 8,833 options); Mr. McGuire (781 RSUs); Mr. Rhodes (781 RSUs); Ms. Sandler (781 RSUs); Mr. Vasos (81,216 PSUs; 169,006 options); Mr. Garratt (13,758 PSUs; 23,155 options); Mr. Owen (16,573 PSUs; 181,938 options); Ms. Taylor (13,881 PSUs; 60,140 options); Mr. Wenkoff (13,151 PSUs; 73,383 options); and all current directors and executive officers as a group (31,182 RSUs; 152,386 PSUs; 715,400 options). Such shares are considered outstanding for computing the percentage owned by each named person and by the group but not for any other person. Excludes shares underlying RSUs that are vested but deferred at the election of Ms. Sandler and Mr. Santana, but over which such persons will not have voting or investment power until the applicable RSUs are settled on a date that is later than 60 days after March 16, 2022.

(3) Mr. Calbert shares voting and investment power over 65,953 shares with his spouse, Barbara Calbert, as co-trustee of The Michael and Barbara Calbert 2007 Joint Revocable Trust.

(4) Ms. Fili-Krushel shares voting and investment power over 7,591 shares with her spouse, Kenneth Krushel.

(5) Mr. Rhodes shares voting and investment power over 16,367 shares with his spouse, Amy Rhodes, as power of attorney of The Amy Plunkett Rhodes Revocable Living Trust, dated July 30, 2014.

## Delinquent Section 16(a) Reports

The U.S. securities laws require our executive officers, directors and greater than 10% shareholders to file reports of ownership and changes in ownership on Forms 3, 4 and 5 with the SEC. Based solely upon a review of these reports furnished to us during and with respect to 2021, or written representations that no Form 5 reports were required, we believe that each of those persons filed, on a timely basis, the reports required by Section 16(a) of the Exchange Act, except that Mr. Owen filed one Form 4 in 2021 (representing one transaction during 2021) that was not reported on a timely basis. The untimely Form 4 was filed to correct an otherwise timely filed Form 4 which, due to a third party reporting error, underreported the number of shares withheld for the payment of taxes in connection with the vesting and payment of certain PSUs.

Case 3:23-cv-01250 Document 99-25 Filed 10/24/25 Page 9 of 11 PageID #: 4053

*DOLLAR GENERAL CORPORATION*
*ATTN: INVESTOR RELATIONS*
*100 MISSION RIDGE*
*GOODLETTSVILLE, TN 37072*



**SCAN TO**
**VIEW MATERIALS & VOTE**

**VOTE BY INTERNET  - www.proxyvote.com or scan the QR Barcode above**
Use the Internet to transmit your voting instructions and for electronic delivery of information until 11:59 P.M. Eastern Time on May 24, 2022. Have your proxy card in hand when you access the website and follow the instructions to obtain your records and to create an electronic voting instruction form.

**ELECTRONIC DELIVERY OF FUTURE PROXY MATERIALS**
If you would like to reduce the costs incurred by our company in mailing proxy materials, you can consent to receiving all future proxy statements, proxy cards and annual reports electronically via e-mail or the Internet. To sign up for electronic delivery, please follow the instructions above to vote using the Internet and, when prompted, indicate that you agree to receive or access proxy materials electronically in future years.

**VOTE BY PHONE - 1-800-690-6903**
Use any touch-tone telephone to transmit your voting instructions until 11:59 P.M. Eastern Time on May 24, 2022. Have your proxy card in hand when you call and then follow the instructions.

**VOTE BY MAIL**
Mark, sign and date your proxy card and return it in the postage-paid envelope we have provided or return it to Vote Processing, c/o Broadridge, 51 Mercedes Way, Edgewood, NY 11717.

---

IF YOU ARE NOT VOTING BY INTERNET OR PHONE,
TO VOTE, MARK BLOCKS BELOW IN BLUE OR BLACK INK AS FOLLOWS:                D72253-P66673                KEEP THIS PORTION FOR YOUR RECORDS

**THIS PROXY CARD IS VALID ONLY WHEN SIGNED AND DATED.**                DETACH AND RETURN THIS PORTION ONLY

---

**DOLLAR GENERAL CORPORATION**

**The Board of Directors recommends you vote FOR each of the listed nominees.**

1.   Election of Directors

| Nominees: | For | Against | Abstain |
|-----------|-----|---------|---------|
| 1a.   Warren F. Bryant | ☐ | ☐ | ☐ |
| 1b.   Michael M. Calbert | ☐ | ☐ | ☐ |
| 1c.   Patricia D. Fili-Krushel | ☐ | ☐ | ☐ |
| 1d.   Timothy I. McGuire | ☐ | ☐ | ☐ |
| 1e.   William C. Rhodes, III | ☐ | ☐ | ☐ |
| 1f.   Debra A. Sandler | ☐ | ☐ | ☐ |
| 1g.   Ralph E. Santana | ☐ | ☐ | ☐ |
| 1h.   Todd J. Vasos | ☐ | ☐ | ☐ |

**The Board of Directors recommends you vote FOR Proposals 2 and 3.**

| | For | Against | Abstain |
|--|-----|---------|---------|
| 2.   To approve, on an advisory (non-binding) basis, the resolution regarding the compensation of Dollar General Corporation's named executive officers as disclosed in the proxy statement. | ☐ | ☐ | ☐ |
| 3.   To ratify the appointment of Ernst & Young LLP as Dollar General Corporation's independent registered public accounting firm for fiscal 2022. | ☐ | ☐ | ☐ |

**The Board of Directors recommends you vote AGAINST Proposal 4.**

| | For | Against | Abstain |
|--|-----|---------|---------|
| 4.   To vote on a shareholder proposal requesting political spending disclosure. | ☐ | ☐ | ☐ |

In the discretion of the proxies named herein, such other business as may properly come before the meeting or any adjournment(s) thereof.

Please sign exactly as your name(s) appear(s) hereon. When signing as attorney, executor, administrator, or other fiduciary, please give full title as such. Joint owners should each sign personally. All holders must sign. If a corporation or partnership, please sign in full corporate or partnership name by authorized officer.

| Signature [PLEASE SIGN WITHIN BOX] | Date | Signature (Joint Owners) | Date |
|---|---|---|---|

Case 3:23-cv-01250    Document 99-25    Filed 10/24/25    Page 10 of 11 PageID #: 4054

**Important Notice Regarding the Availability of Proxy Materials for the Annual Meeting:**
The Notice and Proxy Statement and Annual Report are available at www.proxyvote.com.

D72254-P66673

## DOLLAR GENERAL CORPORATION
### Proxy solicited by and on behalf of the Board of Directors for the
### Annual Meeting of Shareholders to be held on May 25, 2022

The undersigned shareholder(s) of Dollar General Corporation, a Tennessee corporation (the "Company"), hereby acknowledge(s) receipt of the Notice of Annual Meeting of Shareholders and Proxy Statement dated April 1, 2022, and hereby appoint(s) Christine L. Connolly and Elizabeth S. Inman, or either of them, proxies, each with full power of substitution, and authorize(s) them to represent and to vote, as designated on the reverse side of this proxy card, all shares of common stock of the Company that the shareholder(s) is/are entitled to vote at the Annual Meeting of Shareholders of the Company to be held May 25, 2022 at 9:00 A.M. Central Time, in the Goodlettsville City Hall Auditorium, located at 105 South Main Street, Goodlettsville, Tennessee, and at any adjournment(s) thereof.

**This proxy, when properly executed, will be voted in the manner directed herein. If no such direction is made, this proxy will be voted FOR each of the nominees for director in Proposal 1, FOR Proposals 2 and 3, AGAINST Proposal 4, and in the discretion of the proxies upon such other business as may properly come before the meeting or any adjournment(s) thereof.**

**Continued and to be signed on reverse side**