| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | Civil Action No. 3:23-cv-01250 |
| | CLASS ACTION |
| Plaintiff, | Judge Aleta A. Trauger |
| vs. | |
| DOLLAR GENERAL CORPORATION, TODD J. VASOS, JEFFERY C. OWEN, JOHN W. GARRATT, and KELLY M. DILTS, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**

Plaintiffs respectfully respond to Defendants' submission of the decision in *Newtyn Partners, LP v. Alliance Data Systems Corp.,* No. 25-3313 (6th Cir. Jan. 21, 2016) ("*Newtyn*"). *See* ECF Nos. 102, 102-1. Defendants' submission does not explain the relevance of *Newtyn*. As summarized below, the *Newtyn* opinion is inapposite and the contrasts between that case and this Action highlight the strength of the facts alleged in the Third Amended Complaint (ECF No. 93-1, the "TAC").[1]

**First**, unlike here, the statements at issue in *Newtyn* were generic statements about "long-standing" or "stable" clients, where the level of generality did not match the alleged reasons for falsity. *Newtyn* at 9-15. Conversely, ***this*** Action concerns alleged misstatements that match the

---
[1] Unless noted, emphasis is added, internal cites and quotation marks are omitted, and capitalized terms are defined in the TAC. Citations to "¶_" refer to paragraphs in the TAC.

alleged reasons for falsity. For example, here, Defendants assured investors that they "efficient[ly] manage[d]" and "closely monitor[ed] and manage[d]" Dollar General's inventory. ¶¶277, 279. In reality, Defendants knew or recklessly ignored the fact that Dollar General lacked internal systems and controls to manage, track, and account for vast amounts of inventory, which caused the Company to be plagued by an enormous glut of excess inventory. ¶¶50-171. As another example, Defendants assured investors that Dollar General stores were operated by five or more employees. ¶379. In reality, former Dollar General employees reported that "stores would operate with only one individual" for extended periods each day, which made it impossible to properly price inventory at between 30% and 50% of Dollar General stores. ¶174; *see also, e.g.*, ¶¶175-86. These statements are akin to those sustained by courts within this Circuit. *E.g.*, *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2021 WL 4397946, at *1-2 (S.D. Ohio Sept. 27, 2021) (defendants' statements that they "were able to offer reliable, trackable inventory" were misleading by failing to disclose "inventory management and tracking problems").

**Second**, on scienter, the Sixth Circuit criticized the plaintiff in *Newtyn* for failing to conduct its own investigation and, instead, placing "sweeping reliance" on "secondhand allegations" from a different complaint, which "deeply undermine[d] its claim on scienter grounds." *Newtyn* at 16-17. In stark contrast, here, Plaintiffs conducted their own extensive investigation, which included firsthand reports from ***thirty-six former Dollar General employees***.

**Third**, the Sixth Circuit found that the *Newtyn* plaintiff did not plead a "divergence between internal reports and external statements" because the facts alleged there did not demonstrate that defendants knew that the Sobey sponsor's "exit was a done deal." *Newtyn* at 17-18. In contrast, the facts alleged in the TAC establish that Defendants knew about or recklessly ignored Dollar General's excess inventory and failed inventory controls. For example:

2

- Defendants personally received emails about Dollar General's glut of excess inventory and staffing shortages—and established Company practices required them to review those emails (¶¶51-52, 54-58, 96-98).

- Written customer complaints—such as complaints about excess inventory and understaffing—were reported to Defendants Owen and Vasos, with a hard copy placed on their desks (¶¶110-11).

- Defendants personally participated in monthly meetings about overstocked inventory and inventory expenses from 2020-2022 (¶¶99-103), annual meetings concerning problems with inventory from 2012 to 2024 (¶¶104-07), monthly forecast reviews from August 2017 to June 2021 regarding excess inventory issues (¶¶117-25), and monthly "executive meetings" throughout 2020 that revealed the Company's temporary inventory control measures were ineffective (¶¶100-01).

- Defendants received and reviewed controller reports showing quarterly levels of "inventory that was between six and eighteen months old" (¶121) and audit results that "revealed that each store had more inventory than the year before" (¶132).

- Defendants certified inaccurate financial reports that falsely touted the Company's compliance with GAAP and usage of LIFO accounting to value inventory. In reality, Defendants did not have the ability to track the vast amounts of excess inventory stored in the Company's off-site warehouses and stores were overloaded with "impacted" and un-trackable inventory (¶¶490-96, 497-500, 501-03).

**Fourth**, the Sixth Circuit found that the *Newtyn* plaintiff merely "theorize[d]" that defendants had motive to defraud. *Newtyn* at 21-22. In contrast, here, the facts clearly establish Defendants' motive and opportunity to commit fraud. For example, Defendants Vasos and Garratt—who were not restricted from insider trading like the other Defendants (¶¶528-33)—reaped hundreds of millions in illegal insider trades that were suspiciously timed to capitalize on their fraud by selling near Class Period highs and in volumes far in excess of their sales during the Control Period (*Helwig* Factor 1; ¶¶516-22). Further, because Defendants' compensation was directly tied to the Company's yearly Operating Profit (¶¶537-38), Defendants misleadingly concealed Dollar General's labor and inventory management failures to inflate Dollar General's Operating Profit and maximize their personal compensation (*Helwig* Factor 9; ¶¶534-552). *E.g.*, ¶169 (describing Defendant Vasos's participation in efforts to physically conceal excess inventory

during investor visits to Dollar General stores).

**Fifth**, the rest of *Newtyn* is similarly disparate. For example, *Newtyn* did not involve accounting disclosures that were confusing to the marketplace, as confirmed by independent securities analysts (*Helwig* Factor 7; ¶¶553-55), the swift settlement of regulatory lawsuits concerning the Company's pricing fraud and illegal inventory and staffing practices (*Helwig* Factor 5; ¶¶187-208, 209-15), and misstatements that were shortly before corrective disclosures (*Helwig* Factor 3; ¶¶448-450 (May 31, 2023 misstatement), ¶¶568-71 (June 1, 2023 corrective)). The alleged "bribery" in *Newtyn* was copied "straight from the adversary complaint" (*Newtyn* at 16)—and, given the absence of any bribery allegations here, has no relevance for this Action.

The many differences between *Newtyn* and this Action showcase the strength and merit of Plaintiffs' claims. Plaintiffs respectfully submit that they should be granted leave to file the TAC.

DATED: February 4, 2026                    Respectfully submitted,


**SANFORD HEISLER SHARP, LLP**

*/s/ Kevin H. Sharp*
Kevin H. Sharp (TN Bar No. 016287)
Kristi S. McGregor (GA Bar No. 674012)
Brent Hannafan (TN Bar No. 025209)
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
bhannafan@sanfordheisler.com
kmcgregor@sanfordheisler.com

*Liaison Counsel for Lead Plaintiffs Universal-Investment-Gesellschaft mbH and Quoniam Asset Management GmbH*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Salvatore J. Graziano (admitted *pro hac vice*)
Jeremy P. Robinson (admitted *pro hac vice*)
Alexander Noble (admitted *pro hac vice*)
Jonathan D'Errico (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
jeremy@blbglaw.com
alexander.noble@blbglaw.com
jonathan.derrico@blbglaw.com

*Lead Counsel for Lead Plaintiffs Universal-Investment-Gesellschaft mbH and Quoniam Asset Management GmbH*

5

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 4, 2026, a true and correct copy of the **PLAINTIFFS'
RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN
FURTHER SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR
LEAVE TO FILE A THIRD AMENDED COMPLAINT** was filed electronically via the
Court's CM/ECF system. Notification of such electronic filing was served on all counsel of record
on February 4, 2026 via the CM/ECF system, including, but not limited to the following
individuals below:

| | |
|---|---|
| Peter E. Kazanoff | Milton S. McGee, III |
| Amy L. Dawson | Steven Allen Riley |
| Simpson, Thacher & Bartlett, LLP | Joshua Sean Bolian |
| 425 Lexington Avenue | Riley & Jacobson, PLC |
| New York, NY 10017-3954 | 1906 West End Avenue |
| pkazanoff@stblaw.com | Nashville, TN 37203 |
| amy.dawson@stblaw.com | tmcgee@rjfirm.com |
| | sriley@rjfirm.com |
| | jbolian@rjfirm.com |

*/s/ Kevin H. Sharp*
Kevin H. Sharp (TN Bar No. 016287)