**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:23-cv-01250** |
| | ) | **Judge Aleta A. Trauger** |
| **DOLLAR GENERAL CORPORATION, TODD J. VASOS, JEFFERY C. OWEN, JOHN W. GARRATT, and KELLY M. DILTS,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM</u>**

The plaintiffs brought a putative securities fraud class action against Dollar General Corporation ("Dollar General" or the "Company") and four executives. The court granted without prejudice the defendants' Motion to Dismiss the Second Consolidated Amended Complaint (Doc. No. 76). (Doc. No. 89.) Now before the court is the plaintiffs' Motion for Leave to File a Third Amended Complaint (Doc. No. 93), which, for the reasons set forth herein, will be granted.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     The Second Amended Complaint

Lead Plaintiffs Universal-Investment-Gesellschaft mbH and Quoniam Asset Management GmbH, on behalf of those who acquired Dollar General Corporation common stock between May 28, 2020 and August 28, 2024, inclusive (the "Class Period"), brought this putative securities fraud class action against Dollar General and four Company executives: Todd Vasos, Jeffrey Owen, Kelly Dilts, and John Garratt. (Second Consolidated Amended Complaint ("SAC"), Doc. No. 73

at 8, ¶¶ 23–29, 499.) Dollar General is one of the largest discount retailers in the United States. (*Id.* ¶ 3.)

The SAC alleges, on the basis of the observations of twenty-four former employee anonymous witnesses ("FEs"), that, at the same time the Company inadequately staffed stores and improperly managed a glut of merchandise it improvidently ordered—which caused myriad problems—its corporate officers painted a misleadingly rosy picture through 113 false or misleading statements ("Misstatements") in SEC filings (*see, e.g.*, *id.* ¶ 212 (Forms 10-K and 10-Q)) and elsewhere. (*See, e.g.*, *id.* ¶¶ 386 (earnings call), 325 (shareholder meeting), 244 (press release).) The SAC alleges that the Company's mismanagement emerged through a series of partial corrective disclosures, beginning December 1, 2022 and ending August 29, 2024 (*id.* ¶ 456), in the form of financial disclosure forms and earnings and conference calls. (*See, e.g.*, *id.* ¶¶ 477 (Dec. 7, 2023 Form 8-K, Form 10-Q, and an earnings call), 464 (March 16, 2023 conference call).) As a result of these partial disclosures, the plaintiffs allege, the Company's stock price plummeted, to the detriment of shareholders who acquired Dollar General stock during its artificially inflated heyday. (*Id.* ¶ 456.) In addition, the Complaint alleges, Vasos and Garratt traded Dollar General stock without disclosing their nonpublic, material knowledge. (*See id.* ¶ 524.)

The SAC alleges three interrelated categories of corporate mismanagement—inventory, staffing, and pricing. First, the SAC alleges that the Company's broken inventory management process caused a glut of unaccounted-for inventory at distribution centers, ancillary warehouses, and stores. (*Id.* ¶¶ 1, 4–5, 118.) Second, the SAC alleges that stores were understaffed by inadequately trained employees; and, with excess inventory flooding stores, too few workers could not sort items onto overstuffed shelves, and unwanted, expired, and damaged inventory would not fit in overflowing storage rooms, so it spilled onto the sales floors, leading to, among other things,

regulatory fines and settlements. (*Id.* ¶¶ 5, 10–11, 80, 82–83, 111, 124–139, 144–50.) Third, the SAC alleges that, because merchandise prices need to be regularly updated, excess inventory and understaffing led to discrepancies between prices listed on the shelf and those charged at the register, which also contributed to millions of dollars in fines and settlements (*Id.* ¶¶ 13–14, 83, 111, 144–50.)

The SAC alleges four categories of 113 Misstatements regarding the mismanagement—inventory, staffing, pricing, and accounting. In essence, the SAC alleges that the defendants misled investors about the state of the Company and downplayed the foregoing problems. In addition, the SAC alleges that the Company misled investors about accounting metrics in various SEC filings. (*See id.* ¶¶ 391–438.)

The SAC asserts a claim against all defendants for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5(a) & (c) (scheme liability) and (b) (securities fraud) (Count I) (*id.* ¶¶ 505–15); a claim against the individual defendants for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (Count II) (*id.* ¶¶ 516–22); and a claim against Vasos and Garratt for violations of Section 20A of the Exchange Act, 15 U.S.C. § 78-t-1 (Count III) (*id.* ¶¶ 523–32). The plaintiffs seek class certification, compensatory damages, costs, and fees. (SAC at 213–14.) Claims brought under Sections 20(a) and 20A depend on underlying Section 10(b) violations. *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 816 (6th Cir. 2022) (Section 20(a)); *In re Shoals Techs. Grp., Inc. Sec. Litig.*, 802 F. Supp. 3d 1024, 1052 (M.D. Tenn. 2025) (Crenshaw, C.J.) (Section 20A)).[1]

---

[1] The court has described the SAC's allegations more fully in its prior Memorandum. (Doc. No. 88 at 1–7.)

### B. Procedural History

The defendants jointly filed a Motion to Dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 76), which the parties briefed at length (Doc. Nos. 81, 84, 86), and which the court granted, dismissing the SAC without prejudice. (Doc. No. 89.) Now before the court is the plaintiffs' Motion for Leave to File a Third Amended Complaint (Doc. No. 93), to which the plaintiffs have attached a proposed Third Consolidated Amended Complaint ("TAC") (Doc. No. 93-1), and in support of which the plaintiffs have filed a Memorandum (Doc. No. 94). The defendants have filed a Response (Doc. No. 98) along with the Declaration of their counsel (McGee Decl., Doc. No. 99) and Exhibits 1–40 (Doc. Nos. 99-1 through 99-40). The plaintiffs have filed a Reply (Doc. No. 100) along with the Declaration of their counsel (Robinson Decl., Doc. No. 101) and Exhibits 1–4 (Doc. Nos. 101-1 through 101-4). In addition, the defendants filed a Notice of Supplemental Authority (Doc. No. 102), to which the plaintiffs filed a Response (Doc. No. 104) and the defendants filed a Reply (Doc. No. 105)—all without leave.[2]

## II. LEGAL STANDARDS

### A. Rule 15(a)

Rule 15(a) permits a party to amend its pleading "once as a matter of course" within twenty-one days after serving it or twenty-one days after service of a responsive pleading or certain Rule 12 motions. Fed. R. Civ. P. 15(a)(1). Once that window closes, a party may amend its pleading only with the opposing party's consent or by leave of court, and the "court should freely give leave

---

[2] The defendants alerted the court to the Sixth Circuit's decision in *Newtyn Partners, LP v. Alliance Data Systems Corporation*, 165 F.4th 947 (6th Cir. 2026), which was issued after the parties finished briefing the Motion to Amend. (Doc. No. 102.) In their Response, the plaintiffs argue that *Newtyn* is "inapposite" and that the "contrasts between [*Newtyn*] and this Action highlight the strength of the facts alleged in the Third Amended Complaint." (Doc. No. 104 at 1.) In response, the defendants object to what they characterize as the plaintiffs' "unauthorized sur-reply brief." (Doc. No. 105 at 1.)

4

when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Rule's 'purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025) (quoting 6 Wright, Miller, & Kane, Federal Practice and Procedure § 1471 (3d ed. 2010)). Thus, Rule 15(a)(2) "embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

Notwithstanding the liberality with which courts generally are to approach motions to amend, "a court need not grant a motion to amend when the reason for amendment is improper, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024) (quoting *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022)). Relevant here, amendment is futile if, even after amendment, "the complaint still could not withstand a Rule 12(b)(6) motion to dismiss." *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (quoting *Skatemore*, 40 F.4th at 737–38).

### B. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 754 (6th Cir. 2023) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

## III.    DISCUSSION

### A.    Pleading Securities Fraud

To state a claim under Section 10(b) and Rule 10b-5(b) for securities fraud, "a plaintiff must plead with particularity six elements: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 525 (6th Cir. 2023) (first quoting *Stoneridge Inv. Partners, LLC v. Sci-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); and then citing *In re Omnicare, Inc. Secs. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014)).

The defendants argued that the plaintiffs failed to plead three of these elements—material misrepresentations or omissions by the defendants, scienter, and loss causation—as to *each* of the 113 alleged Misstatements in the plaintiffs' 533-paragraph SAC. (*See* Doc. No. 81 at 41–79.) The court, in ruling on the Motion to Dismiss, found that the plaintiffs failed to plead scienter.[3] (Doc. No. 88 at 15, 31–33.)

---

[3] Scienter is also an element of a scheme liability claim under Rules 10b-5(a) and (c). *Oakland Cnty. Emps.' Ret. Sys. v. Sotera Health Co.*, No. 25-3311, 2026 WL 508962, at *7 (6th Cir. Feb. 24, 2026) (citing *ServiceMaster*, 83 F.4th at 525).

6

Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*, impose heightened pleading standards on securities fraud claims like the ones in this case. *ServiceMaster*, 83 F.4th at 524. Relevant here, while under Rule 9(b) plaintiffs can allege state of mind generally, Fed. R. Civ. P. 9(b), "the PSLRA imposes additional and more 'exacting pleading requirements' for pleading scienter." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)).

### B. Scienter

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (quoting *Tellabs*, 551 U.S. at 319). To plead scienter, "the complaint shall, with respect to each act or omission alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A)—that is, either a "knowing and deliberate intent to manipulate, deceive, or defraud" or "recklessness." *Newtyn*, 165 F.4th at 965 (quoting *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016)). The court analyzes scienter on a "defendant-by-defendant basis." *Taylor*, 29 F.4th at 816 (citing *City of Monroe Emps.' Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 684–87 (6th Cir. 2005)).

Under *Tellabs*, courts employ a three-step test to determine whether a complaint sufficiently pleads scienter. *Newtyn*, 165 F.4th at 965 (citing *Tellabs*, 551 U.S. at 322–23). First, courts accept the complaint's factual allegations as true. *Taylor*, 29 F.4th at 812 (citing *Tellabs*, 551 U.S. at 322). Second, courts "review the allegations holistically 'to determine whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter.'" *Id.* (emphasis in original) (some internal quotation marks omitted) (quoting *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 979 (6th Cir. 2018)). Third, courts must "take into account plausible opposing inferences" to determine whether "a reasonable person would deem the inference of scienter

7

cogent and at least as compelling as any opposing inference one could draw from the facts alleged."
*Tellabs*, 551 U.S. at 322–24; *see also ServiceMaster*, 83 F.4th at 526. That is, "[i]f the inference of scienter is 'cogent and at least as compelling' as any benign explanation, the plaintiff has established a 'strong' inference." *Newtyn Partners*, 165 F.4th at 965 (quoting *Tellabs*, 551 U.S. at 324).

As part of the scienter analysis, courts within the Sixth Circuit conduct a holistic review of the facts using a set of non-exhaustive considerations probative of securities fraud, as originally set forth in *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (*en banc*), *abrogated on other grounds by Tellabs*, 551 U.S. at 314. *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 23-5538, 2024 WL 2874575, at *11 n.8 (6th Cir. June 7, 2024) (citing *Doshi*, 823 F.3d at 1039–40)). The "*Helwig* factors" are:

> (1) insider trading at a suspicious time or in an unusual amount;
>
> (2) divergence between internal reports and external statements on the same subject;
>
> (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;
>
> (4) evidence of bribery by a top company official;
>
> (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;
>
> (6) disregard of the most current factual information before making statements;
>
> (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;
>
> (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and
>
> (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

8

*ServiceMaster*, 83 F.4th at 526 (quoting *Helwig*, 215 F.3d at 552). The *Helwig* factors are not a checklist. If some factors are inapplicable, that "does not meaningfully detract from a strong inference of scienter, as the factors are 'non-exhaustive.'" *Strougo v. Tivity Health, Inc.*, 551 F. Supp. 3d 839, 851 (M.D. Tenn. 2021) (Crenshaw, C.J.) (quoting *Helwig*, 251 F.3d at 552); *see also Dougherty*, 905 F.3d at 981–82 (finding a strong inference of scienter where three *Helwig* factors supported the inference and six factors were inapplicable).

### C. The Court's Ruling on the Motion to Dismiss

The court found, after a holistic review, that the SAC did not allow the court to draw a strong inference of scienter and on that basis alone dismissed the SAC for failure to state a claim. (Doc. No. 88 at 15, 31–33.) In particular, the court found that none of the six *Helwig* factors on which the plaintiffs relied supported their claims. (*Id.* at 31.)

### D. The Proposed Third Amended Complaint

The proposed TAC amends only facts. It does not change the parties, claims, or relief sought. (*Compare* SAC at 1, ¶¶ 23–29 (parties); ¶¶ 505–32 (claims); 213–214 (relief), *with* TAC at 1, ¶¶ 28–29, 31, 33, 35 (parties); ¶¶ 606–633 (claims); 253 (relief).) At a broad level, the TAC adds 101 paragraphs, (*contrast* SAC (533 paragraphs), *with* TAC (634 paragraphs)), and allegations from an additional twelve FEs. (*Contrast* SAC (twenty-four FEs), *with* TAC (thirty-six FEs).) The plaintiffs argue that the TAC adds facts that address every shortcoming in its scienter allegations and therefore that filing the proposed TAC would not be futile. (Doc. No. 93 at 2–5; Doc. No. 94 at 13, 15–21; Doc. No. 100 at 5–14.) The defendants respond that the plaintiffs have "overstate[d] the new allegations," that the proposed TAC would not allow the court to draw a

9

strong inference of scienter, and that allowing the plaintiffs to file the proposed TAC would be futile. (Doc. No. 98 at 6, 14–29.)[4]

The parties disagree about whether the new facts in the TAC allow the court to draw a strong inference of scienter on the basis of seven of the *Helwig* factors.[5] As just one example of the parties' disagreements about how to weigh the *Helwig* factors, factor 1 is insider trading at a suspicious time or in an unusual amount. *Helwig*, 251 F.3d at 552. In ruling on the Motion to Dismiss, this court found that, even if defendants Vasos and Garratt had made suspicious trades, as alleged, the unexplained lack of any alleged suspicious trades by the other two individual defendants, Owen and Dilts, would undermine any evidence of scienter related to factor 1. (Doc. No. 88 at 15–17.) Accordingly, the court did not determine whether Vasos's and Garratt's trades were suspicious. (*Id.*) The plaintiffs argue that the TAC adds facts that explain why Owen and Dilts did not make any trades: as newly promoted executives, they were "subjected to Company share ownership policies that required them to *increase* their Dollar General Stock holdings during

---

[4] As the court discussed above, there are several reasons other than futility for which the court may deny a motion to amend. The defendants argue only that amendment is futile.

[5] The plaintiffs previously argued that six *Helwig* factors are relevant. They have added factor 3. In the motion to dismiss briefing, the defendants contended, and the plaintiffs conceded, that the SAC did not plead any facts supporting Factor 3, which is the closeness in time between misstatements and corrective disclosures. (*Compare* Doc. No. 81 at 75 (stating that the plaintiffs did not plead facts supporting several *Helwig* factors, including Factor 3), *with* Doc. No. 84 at 78 ("The Complaint pleads nearly all *Helwig* factors, save only for Factor[] 3 ('closeness in time . . .') [among others].''); *accord* Doc. No. 88 at 14–15 (noting that the "plaintiffs concede that they have not pled *Helwig* factors 3, 4, or 8").) The defendants contended that the time between alleged misstatements and corrective disclosures "undermines" an inference of scienter. (Doc. No. 81 at 75.) The plaintiffs did not respond to this contention, and the court did not address Factor 3 in its analysis of the Motion to Dismiss. The plaintiffs' Memorandum in support of their Motion to Amend does not mention Factor 3. In their Response, the defendants restate their contention that, not only does the TAC fail to plead facts in support of factor 3, but the facts actually cut against this factor. (Doc. No. 98 at 25.) In the plaintiffs' Reply brief, for the first time, the plaintiffs argue in three sentences that the closeness in time between alleged misstatements and corrective disclosures "reinforces the inference of scienter." (Doc. No. 100 at 13.)

10

the Class Period." (Doc. No. 94 at 17 (citing TAC ¶¶ 523–33).) The defendants respond—having filed the relevant corporate policy (Doc. No. 99-23 at 13)—that the plaintiffs misdescribe the policy and, consistent with the policy correctly described, Owen and Dilts could have sold shares, in part because their holdings exceeded the Company's guidelines. (Doc. No. 98 at 14–16, 32.) Thus, the defendants argue, the TAC's new allegations do not cure the deficiencies the court identified as to factor 1. (*Id.* at 16–17.) The plaintiffs respond that the defendants misunderstand the Company's policy and that they have miscalculated Owen's and Dilts's holdings. (Doc. No. 100 at 10–11.)

The foregoing is a simplified account of the disagreement between the parties regarding a threshold issue[6] of just one of the *Helwig* factors. In addition, the parties "incorporate" by reference the briefs they submitted in support of, and in opposition to, respectively, the Motion to Dismiss. (Doc. No. 94 at 20 n.4; Doc. No. 98 at 29.)

### E.     Motion to Amend

As the court discussed above, courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But "courts may deny a request if the amendment would be futile." *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Mich.*, 146 F.4th 496, 515 (6th Cir. 2025) (citing *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014)). Put differently, "[f]utility serves as a basis, not a mandate, to deny leave to amend." *Baird v. Nessel*, No. 24-11205, 2024 WL 4806488, at *1 (E.D. Mich. Nov. 15, 2024) (collecting cases); *see also Ashtabula Area City Sch. Dist. v. Liberty Mut. Fire Ins. Co.*, No. 1:25-cv-2362, 2026 WL 376858, at *3 (N.D. Ohio Feb. 11, 2026) ("[E]ven if . . . the Court were to find that all

---

[6] The parties still disagree about whether Vasos's and Garratt's trades were suspicious. (Doc. No. 98 at 17–19; Doc. No. 100 at 11–12.)

11

the proposed amendments opposed by Defendant were futile, the Court is not compelled or required to deny leave to amend."). In other words, "although courts *may* deny a motion to amend . . . on futility grounds, 'many courts, for reasons of practicality, decline to engage in a futility analysis at the motion to amend phase and opt instead to assess questions of plausibility later when ruling on the motion to dismiss.'" *L.H. v. Red Roof Inn, Inc.*, No. 3:22-cv-625-CHB-RSE, 2025 WL 714385, at *18 (W.D. Ky. Mar. 5, 2025) (emphasis in original) (quoting *Restocon Corp. v. Metro. Knoxville Airport Auth.*, No. 3:23-cv-142, 2023 WL 6614416, at *2 (E.D. Tenn. Aug. 25, 2023)) (collecting cases).

For example, in *Donahue v. Travelers Companies, Inc.*, the defendants opposed the plaintiffs' motion to amend the complaint on the basis of futility. No. 5:24-cv-01141, 2024 WL 4534250, at *3 (N.D. Ohio Oct. 21, 2024). The court "considered futility"[7] without determining whether the proposed amended complaint could withstand a motion to dismiss and granted the plaintiffs' motion to amend. *Id.* at *4. The court reasoned that "[a]ny challenges to the claims presented in Plaintiffs' amended complaint are better presented in a later filed Rule 12 motion to dismiss that fully addresses all of the allegations and applicable legal standards." *Id.* at *3 (noting at the same time, however, that "Defendants have not met their burden of establishing that the proposed amendments would be futile in their entirety," without providing an analysis). Similarly, in *Baird v. Nessel*, the court granted the plaintiff's motion to amend "out of a desire for a 'more orderly' presentation of the Parties' allegations and arguments." 2024 WL 4806488, at

---

[7] Another judge on this court has found that "it appears that a court cannot either grant or deny a motion to amend without at least *considering* the issue of futility," but a court may grant a motion to amend without "issuing a ruling as to futility." *HLFIP Holding, Inc. v. Rutherford Cnty.*, No. 3:19-cv-00714, 2021 WL 6498858, at *19 (M.D. Tenn. Nov. 15, 2021) (Richardson, J.) (emphasis in original); *see also Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 328 (6th Cir. 2020) ("[T]he court must consider, *inter alia*, '. . . futility of amendment.'" (quoting *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005))).

12

\*2–3 (quoting *Kellogg Co. v. FPC Flexible Packaging Corp.*, No. 1:11-cv-272, 2012 WL 769476, at \*4 (W.D. Mich. Mar. 7, 2012)). The court explained that granting the motion to amend without prejudice to the plaintiff's ability to move to dismiss is often the best course, because the resulting briefs "are better presented with all of the allegations and the applicable legal standards neatly arranged, instead of having the parties' arguments for and against dismissal of the claims in the proposed amended complaint crisscrossed and interspersed throughout the parties' opposition and reply briefs addressing Defendants' motions to dismiss and Plaintiff's motion for leave to amend." *Id.* at \*2 (citation modified).

While the plaintiffs argue that the defendants overstate the extent of the proposed changes, (Doc. No. 98 at 6), it remains to be seen whether the changes are sufficient to overcome a 12(b)(6) motion. The court has considered futility and, after an initial screening, does not find the proposed TAC clearly futile. Rather than conduct a full futility analysis now, the court would be better positioned if it were afforded the full benefit of a 12(b)(6) briefing on the amended complaint.[8]

Separately, the parties disagree about how Rule 15(a)(2) applies in securities fraud cases. The plaintiffs maintain that, "[i]n the securities litigation context, leave to amend is particularly appropriate where the complaint does not allege fraud with particularity." (Doc. No. 94 at 7 (quoting *Morse*, 290 F.3d at 800).) Meanwhile, the defendants argue that Rule 15(a)(2)'s "'usual liberal standards' do not apply to securities fraud cases" and that the "PSLRA 'restricts the scope of Rule 15(a) . . . such that plaintiffs have more limited ability to amend.'" (Doc. No. 98 at 13–14

---

[8] The plaintiffs write, without citing caselaw, that, "[b]ecause the Rule 15 futility standard is the same as the Rule 12(b)(6) motion to dismiss standard, Defendants should not be able to both oppose leave to amend and bring a subsequent motion to dismiss." (Doc. No. 94 at 15 n.3.) The court disagrees. The plaintiffs further note that they "will oppose any such effort for Defendants to have two bites at the same apple." (*Id.*) While the plaintiffs may make whatever arguments they like in response to what the court expects will be the defendants' forthcoming motion to dismiss, the court suggests that the plaintiffs not spend too much time on this argument.

13

(omission in defendants' brief) (first quoting *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 455 (6th Cir. 2014); and then quoting *Lim v. Hightower*, 2025 WL 2965692, at \*14 (6th Cir. Oct. 21, 2025)).) The quotation in *Lim* originally appeared in *Louisiana School Employees' Retirement System. v. Ernst & Young, LLP*. *See* 622 F.3d 471, 486 (6th Cir. 2010) ("[T]he PSLRA restricts the scope of Rule 15(a) in the context of securities litigation such that plaintiffs have more limited ability to amend their complaints." (citing *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 692 (6th Cir. 2003)). Another court in this circuit has recently addressed a similar argument regarding a plaintiff's motion to file a supplemental complaint under Rule 15(d):

> As a preliminary matter, Defendants cite *Kuyat . . .* and *Miller . . .* for the proposition that the "usual liberal standards under Rule 15 do not apply to cases governed by the PSLRA." In *Kuyat*, the Sixth Circuit did not discourage amendments but cautioned courts not to ignore a party's potential motives . . . . The Sixth Circuit also warned that "the purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA." *Miller*, 346 F.3d at 692. Contrary to Defendants' contention, these cases do not stand for the proposition that amended pleadings are not allowed under the PSLRA; rather, they instruct that a plaintiff should not engage in gamesmanship by repeatedly amending a complaint with claims under the PSLRA.

*City of Fort Lauderdale Gen. Emps.' Ret. Sys. v. Holley Inc.*, No. 1:23-cv-00148-GNS, 2025 WL 877547, at \*2–3 (W.D. Ky. Mar. 20, 2025) (docket citation omitted) (noting that the same futility analysis applies to both Rule 15(a) motions to amend and Rule 15(d) motions to supplement (citing *McNichols v. Lyons*, No. 3:17-cv-688-RGJ, 2023 WL 5154525, at \*7 (W.D. Ky. Aug. 10, 2023))). While the plaintiffs seek to file a *third* amended complaint, the parties have briefed a motion to dismiss only once. Even accepting the defendants' contention that the court ought to apply Rule 15(a)(2) more conservatively in securities fraud cases, the court perceives no gamesmanship by the plaintiffs and is not persuaded that, in this case, it should exercise its discretion to deny the plaintiffs' Motion to Amend.

14

## IV. CONCLUSION

The court will grant the plaintiffs' Motion for Leave to File a Third Consolidated Amended Complaint (Doc. No. 93). An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge

15